WILLIAM B. MULFORD, et al., *Appellants,* v. CENTRAL FARMERS TRUST COMPANY, a Corporation, as Executor of the Last Will and Testament of B. W. MULFORD, deceased, *Appellee.*

Division B.

Opinion filed March 18, 1930.

Petition for rehearing denied April 17, 1930.

*Joel W. Massie* and *Crawford & May,* for Appellants;

*Wideman & Wideman,* for Appellee.

BUFORD, J.—B. W. Mulford died in Palm Beach County, Florida, on the 25th day of June, 1926.

On the 3rd day of July, 1926, a purported last will and testament of the said Mulford was presented for probate

in the county judge's court in and for Palm Beach County, Florida. The will appeared to be in proper legal form and was proven by the affidavits of two subscribing witnesses. The will was probated. Later the appellants here filed a petition to revoke the probate of the will. Testimony was taken and an order entered dismissing the petition.

Appeal was taken to the circuit court and in due course the order dismissing the petition for revocation of probate was affirmed. Whereupon, appeal was entered to this Court. The petition for revocation may be said to be based upon two grounds. First, that the purported will was not the will of B. W. Mulford in that it was never executed by him in such manner as to be legally accepted as the last will and testament of B. W. Mulford; and second, that at the time of the pretended execution of the will by Mulford that he did not possess testamentary capacity because of mental infirmity. Sections 3595 and 3597, Rev. Gen. Stats., Sections 5460 and 5462, Comp. Gen. Laws 1927, require that all wills shall be signed by the testator, or by some other person in his presence and by his express directions. The evidence shows that Mulford at the time the will was executed was physically unable to sign his name; that a third party present requested a physician, who was also present, to assist Mulford in signing his name and executing the will. This physician received no directions whatever from Mulford, but acting upon the request of the third party, according to the undisputed evidence, guided the hand of Mulford over the paper and signed the will.

The affidavits of two of the subscribing witnesses were identical except for the interchanging of names of the witnesses in the two affidavits. The affidavit made by Dr. Lewis was as follows:

"Before the undersigned officer personally appeared R. G. Lewis, who being duly sworn, says that he was personally present as subscribing and attesting witness with Lloyd J. Netto and Viola C. Hetrick, who were also present as subscribing and attesting witnesses, and saw the testator subscribe his name to the instrument, of writing hereto annexed, as and for his last will and testament, and that the said B. W. Mulford did then and there in the presence of said R. G. Lewis, Lloyd J. Netto and Viola C. Hetrick, publish and declare the same to be his last will and testament; that the said R. G. Lewis, witness did then and there, at the special request of said B. W. Mulford, and in his presence and in the presence of Lloyd J. Netto and Viola C. Hetrick, subscribe his name thereto as attesting witness; and the said R. G. Lewis swears that he verily believes the said instrument of writing hereto annexed, so subscribed, published, declared and attested as aforesaid, to be the last will and testament of said testator, the said B. W. Mulford.

"R. G. LEWIS, M. D.

"Sworn to and subscribed before me this 3rd day of July, A. D. 1926.

(Seal) HARRY A. JOHNSTON,

"Notary Public.

"My commission expires July 5th, 1928."

The affidavit of Dr. Netto was identical except that he appeared as the affiant instead of Lewis and his affidavit referred to Lewis as another subscribing witness in lieu of Netto.

On the hearing on petition to revoke the will every material allegation in each affidavit was positively contradicted by each of the affiants and also by Viola C. Hetrick,

who was the other subscribing witness and who was a trained nurse in attendance upon Mulford at the time the will was executed. Outside of these affidavits there is no evidence that Mulford ever at any time declared this will to be his last will and testament. The evidence shows that Mr. Ervin testified that Mr. Mulford told him that he, Mulford, had read the will but he did not testify that Mr. Mulford declared the same to be his last will and testament or that he published it as such. Aside from the affidavits above mentioned, the evidence shows beyond question that Mulford did not in the presence of either of the subscribing witnesses indicate that he had any intention of executing the paper as his last will and testament; that he did not declare same to be his last will and testament and that he did not request any witnesses to subscribe their names as attesting witnesses. Such directions as Dr. Lewis received, he received from Mr. Ervin and the other witnesses received such instructions as they received from Dr. Lewis. The record shows that neither Dr. Lewis nor Dr. Netto gave any thought whatever to the signing of the proof affidavits. The affidavits were brought to each of them by an attorney who is not shown to have been cognizant of the real facts and in whom they had confidence, and the attorney told them in substance that the affidavits were papers which were necessary to be signed in connection with the Mulford will which they had subscribed as witnesses, and they each say that they signed the affidavits without acquainting themselves with the contents thereof.

It has been said in Stevens v. Leonard, an Indiana case reported in 56 N. E. R. 27:

"'No person is justified in putting his name as a subscribing witness to a will unless he knows from the

testator himself that he knows what he is doing. The witness should also be satisfied, from his own knowledge, of the state of the testator's mental capacity, that he is of sound and disposing mind and memory. By placing his name to the instrument, the witness, in effect, certifies to his knowledge of the mental capacity of the testator, and that the will was executed by him freely and understandingly, with a full knowledge of its contents. Such is the legal effect of the signature of the witness when he is dead or is out of the jurisdiction of the court.'

" 'It seems to be considered,' says Judge Redfield, 'that they (subscribing witnesses to a will) are only witnesses to the act of signing. But when it is considered that the witnesses to a will must certify to the capacity of the testator as well as to the act of execution, the transaction begins to assume a somewhat different aspect. One who put his name as a witness to the execution of a will while he was conscious that the testator was not in possession of his mental faculties placed himself very much in the same attitude as if he had subscribed as witness to a will which he knew to be a forgery, which every honorable man could only regard as becoming accessory to the crime by which the will was fabricated; so that it is not improbable that the want of proper appreciation of the discredit resulting from the act of becoming a witness to the execution of a will by one confessedly incompetent to the proper understanding of the instrument may, and probably does, result chiefly, with us, from the general misapprehension of the law, upon the subject, rather than from any settled disposition to disregard its dictates, if correctly understood.' ''

All of the subscribing witnesses in this case appear to have acted thoughtlessly and with no consideration of the responsibility which they were assuming in playing the part which they did play in connection with the execution, or alleged execution, of the will, but there is no evidence that either of them was influenced in so doing by any venal, wicked or ulterior motive. Mr. Ervin was the business associate and confidant of Mulford. He had visited Mulford daily at the hospital and was recognized by all who knew him, as we gather from the record, as the man upon whom Mr. Mulford depended in all matters, and the witnesses, apparently without taking thought of just what their respective acts meant in this connection, complied with Mr. Ervin's request to get the will executed.

Be this as it may, what the court wanted was the truth in regard to the testamentary capacity of Mr. Mulford at the time the will was executed. It appears that the court heard the truth in regard to this from the three subscribing witnesses, one of whom, Dr. Netto, was not in position to give testimony of much value, because his information was only such as was gained in the few minutes during which he was in the room where the will was being executed. He did not hear Mulford speak, or by sign or token indicate that the wanted to do or not to do anything. His testimony was that Mulford appeared to be in a semi-conscious condition. The nurse, who was also a subscribing witness, testified that in her opinion Mulford was unconscious at the time the will was signed; that he not only was without testamentary capacity, but that he knew nothing of the purported execution of the will. Dr. Lewis, in answer to the following question: "Referring to the same incident when the signature of B. W. Mulford was made upon the instrument that is here on probate, would you say that B. W. Mulford did or did not have

capacity to contemplate his property and the persons to whom he might desire to will it and the general nature of the will that is here on probate?" replied, "I will say that he was incapacitated."

In Hamilton v. Morgan, 93 Fla. 311, 112 So. R. 80, the Court say:

"There is a well recognized distinction between testamentary power and testamentary capacity. Testamentary capacity goes to the ability to execute a will; but what passes under it is controlled by law. If the testator comprehends perfectly the condition of his property, his relation to those who would, should or might have been the objects of his bounty, the scope and effect of his will which comprehends sufficient active memory to collect voluntarily in his mind the complexities of the business to be transacted and keep them in mind long enough to perceive their relation to each other and to form a rational judgment in relation to them, he is said to have mental capacity."

Further in the same case, the Court say:

"The findings of fact by a probate judge upon conflicting evidence should ordinarily not be disturbed on appeal to the circuit court, where there is ample evidence to sustain the findings; yet where the probate judge misapprehended the legal effect of the evidence as an entirety, his finding should not be sustained merely because there is evidence that is contradicted on which the findings may be predicated."

After a careful examination of the record in this case, our conclusion is that on the issues made the probate judge misapprehended the legal effect of the evidence. We think

that the evidence establishes beyond the question of a doubt that at the time this will was executed Mulford was not possessed of testamentary capacity and we think that to sustain a will made under such conditions as surround the purported execution of this will would be to disregard the well settled law that a will to be effective must be made and executed by one of sound and disposing mind and memory.

The decree of the chancellor affirming the order of the probate court of Palm Beach County is reversed, with directions that an order be entered by the chancellor reversing the order of the probate court in dismissing the petition and further directing that an order be entered in said court revoking the probate of the will.

It is so ordered.

Reversed.

WHITFIELD, P. J., AND STRUM, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.