116 So.2d 440 (1959)
In re ESTATE of Q.M. WILSON, Deceased.
John F. KIRK, Appellant,
v.
Joan WILSON, Appellee.
No. 1271.
District Court of Appeal of Florida. Second District.
December 16, 1959.
*441 John E. Born, West Palm Beach, for appellant.
James Nemec, West Palm Beach, for appellee.
ALLEN, Chief Judge.
The appellant, as petitioner in the lower court, filed a claim against the Estate of Q.M. Wilson on January 13, 1956, in the amount of $16,500. Thereafter on April 25, 1958, the petitioner moved for a compulsory settlement of his claim which was denied by an order of the lower court entered on March 4, 1959, after testimony and arguments of counsel were presented to the court.
Q.M. Wilson died on May 15, 1955, leaving an estate appraised at approximately $100,000. Prior to his death the deceased was the sole stockholder and operator of the Wilson Motor Company, which was engaged in the business of selling household appliances at retail and also rented and repaired automobiles. The appraised valuation of the 50 shares of the Wilson Motor Company was $88,000. The company's principal asset other than the business itself was a mortgage which returns 5% and is valued at approximately $22,000.
Joan Wilson, the wife of decedent, was issued letters testamentary on May 31, 1955, and a notice to creditors was published commencing on June 3, 1955. Appraisers were appointed and the fore-mentioned appraisal of $100,000 was subsequently filed, $88,000 of which was represented by the 50 shares of stock. The executrix, in reliance upon the appraisal, and after creditors' claims of approximately $50,000 had been filed, decided to continue operation of the business in an attempt to pay off some of the claims.
From the time the letters testamentary were issued on May 31, 1955, the executrix filed no annual returns until November 4, 1957, at which time also the executrix filed her first petition to operate the business of decedent. On the same date the executrix filed annual reports for June, 1955 to May, 1956, and for June, 1956, through May, 1957. Also at this time the executrix filed a petition for leave to vote the stock of the corporation alleging that she had been operating the business and had reduced the indebtedness of the company. The court then entered an order granting the executrix the right to vote the stock, and continue operating the business.
The appellant's claim had been pending against the estate since January 13, 1956, *442 and on April 25, 1958, he moved for a compulsory settlement of his claim alleging mismanagement and misappropriation of assets; and also sought to vacate the order granting the executrix leave to vote the stock. The lower court conducted hearings on June 19, 1958, and on October 8, 1958, and thereafter entered an order on March 4, 1959, denying the appellant's petition. The probate judge made certain findings absolving the executrix from personal liability and then stated in his final order:
"Therefore, this Court is of the opinion that although the Executrix should have earlier obtained an Order for the continuation of the business that such Order would not have changed the situation whatsoever and further, that Petitioners are guilty of laches. The Court finding that no fraud or willful mismanagement or misappropriation of funds has been practiced by the Executrix, it is therefore,
"Ordered, Adjudged and Decreed that the Petition of John F. Kirk and the Palm Beach Clinic be and the same are hereby denied."
The issue which we consider determinative of this appeal is stated by appellee as follows:
"Is the personal representative of an estate, which is the sole owner of the outstanding stock of a corporation, personally liable to the creditors of the estate, where the business of the corporation is continued without objection by the creditors or a showing of fraud, waste, misappropriation or negligence by such personal representative, even though such corporate business is continued without (an) order of the Probate Court?"
After a careful study of the transcript of testimony adduced in this case, we have found no evidence of mismanagement of the estate and are compelled to abide by the findings of the lower court. Without reciting all the details of the numerous transactions conducted by executrix, the germane facts for the purpose of this opinion are as follows:
Although the appraisal of $100,000 was never formally objected to by the executrix, certain testimony in the record reflects that this figure was in fact an inflated value which was precipitated by the $88,000 valuation placed on the stock of decedent's corporation. The appraisers testified that they took the book value of the stock as reported to them by the corporation's accountant as being the true value of the stock. Lee Shepard, Jr., a C.P.A. who had performed the accounting for the company for eight years prior to the death of the decedent, testified that the actual value of the stock was less than the appraised book value of $88,445.51; that the accounts receivable appraised at $25,000 were actually worth only a small fraction of that amount due to the collectibility of the accounts; that the lease on the corporation's premises which was appraised at $18,000 was actually expired and should be charged off entirely; and that at the time of decedent's death, the business could not meet its obligations and was showing a definite loss. Thus the business, according to Shepard, had little or no sale value and liquidation would have returned a very low price at the time the executrix took it over.
One of the co-founders of the business with deceased remained with the business as the first manager thereof after deceased's death. He assured the executrix that the business was well worth $95,000 to $100,000 and that there was nothing to worry about. It was discovered approximately a year later that he was appropriating monies to his own use whereupon the executrix immediately fired him. When the executrix discharged the first manager, she hired a second manager. The second manager testified that he reduced the indebtedness from $88,000 to $49,000 principally by a $15,000 loan by the executrix to the business and $15,000 *443 by operation of the business. Throughout this period the executrix advanced monies to the business in an effort to keep it operating. During the latter part of 1957, the executrix learned that the second manager was also mishandling the funds of the business and also learned that he was wanted in New York by a bonding company for similar misconduct. This second manager was immediately dismissed and the executrix hired Walter Steele to do what he could with the business.
Steele testified that during the period of December, 1957 to June, 1958, he reduced the indebtedness some $30,000 by way of credits, returns, and charge-offs against the company and by $13,000 in cash payments to creditors. Steele also stated that much of the "appraised inventory" was actually not paid for in that it was held under a trust receipt arrangement with only 20% paid down on the merchandise by the business. This fact points up another reason that the original appraisal of the business did not reflect its true value.
There is evidence in the record to indicate that the executrix advanced $41,000 to the business for operating costs during her operation of the business. Of this amount she has received in return $25,000 leaving a net loss to her personally of $16,000 which is represented by a mortgage on her home.
In considering the allegations of the appellant that executrix did not act in good faith and was guilty of waste, mismanagement, misappropriation of funds and negligence, we note that the record presented wholly fails to support these allegations. An executrix is not an insurer of the success of the business conducted during the administration of the estate. First Trust & Savings Bank v. Henderson, 101 Fla. 1437, 136 So. 370. Thus a bare allegation of a devastavit is insufficient, nor will a devastavit be presumed, but on the contrary, must be clearly established by the evidence. 33 C.J.S. Executors and Administrators, § 243, p. 1252; and First Trust & Savings Bank v. Henderson, supra.
The personal representative of an estate is regarded as the trustee or agent, appointed by law, for the benefit and protection of the heirs and the creditors of the decedent. Pyle v. Pyle, Fla. 1951, 53 So.2d 312. He occupies a position of trust with respect to those who are interested in the estate and as such is required to act in good faith and with due prudence and diligence in the care and management of the estate. His relationship as a representative of the creditors casts upon him a duty to protect their interest since they have first claim against the estate. Accordingly it has been held that, in a broad sense, the representatives of a decedent hold his estate as a trust fund for the payment of decedent's debts. State v. Beardsley, 77 Fla. 803, 82 So. 794.
In measuring appellee's conduct with these standards, the inescapable conclusion is that waste, mismanagement, misappropriation of funds and negligence have not been established, but to the contrary, the record discloses that the executrix acted in a reasonable and prudent manner and conducted the business to the best of her ability notwithstanding her unfortunate selection of managers. It affirmatively appears that the corporation, at the time of decedent's death, was in poor financial condition and had a very low liquidation or sale value. The executrix testified that her late husband and she always considered the payment of their debts of primary importance. This fact partially explains the numerous advances made by executrix to the business and the continued operation of the business always with the hope of being able to pay the claims of creditors.
In each instance upon learning of the misconduct of the managers of the business, she immediately dismissed them and attempted to remedy the situation. After *444 being informed that an order of the court is required by Florida Statutes in order for her to continue operating a deceased's business, the matter was properly presented to the court. Although the application for this order was not timely made, it is apparent that the order would have been granted if requested within the statutory period, as the financial status of the business at that time rendered the sale or liquidation thereof inadvisable, if not impossible.
It is to be noted that the views expressed herein are in essence the same as the findings which were made by the lower court after hearing the testimony and observing the witnesses during the trial of the cause. These findings should not be disturbed on appeal where there is ample evidence in support thereof. Mulford v. Central Farmers' Trust Co., 99 Fla. 600, 126 So. 762. This court recently held in Pancoast v. Pancoast, Fla.App. 1959, 107 So.2d 787, 791, that:
"* * * If the lower court had sufficient substantial, competent evidence before him to determine this fact, then this court must give the lower court the weight ordinarily given to the findings of the trier of facts upon review by an appellate court. It is well settled in Florida the findings of fact by a probate judge which are based upon substantial, competent evidence will be given the same weight, on appeal, as the findings of any other trier of fact."
We are cognizant of the applicability of Section 733.08(1), Florida Statutes, F.S.A. which provides for obtaining an order of the county judge authorizing the administrator to continue operating a deceased's trade or business; and nothing said herein is to be considered to countenance the non-compliance therewith. It is pointed out, however, that Section 733.08(5) provides an opportunity for a party interested in the estate to resort to the county judge for an order to wind up the trade or business thereby making it possible to supersede an order obtained pursuant to Section 733.08(1).
Thus the timely request for permission to continue operating a deceased's business gives no assurance per se that this order will not be superseded, or that the administrator's operation will be satisfactory. Conversely, the failure to timely obtain this permission would not per se cast absolute personal liability on the administrator who assumes operation of an already heavily indebted business, and continues operation in an otherwise prudent manner.
We have reviewed other issues raised by appellant, and finding no reversible error has been made to appear, and for the reasons assigned herein, the judgment of the lower court should be and is affirmed.
Affirmed.
KANNER and SHANNON, JJ., concur.