143 So.2d 522 (1962)
J.B. NEDD and W.J. Oven, Jr., As Administrator of the Estate of Agnes Rubin Nedd, Deceased, Appellants,
v.
Weldon G. STARRY et al., Appellees.
No. D-188.
District Court of Appeal of Florida. First District.
July 17, 1962.
W.J. Oven, Jr., Tallahassee, for appellants.
Ford L. Thompson, Tallahassee, for appellees.
RAWLS, Judge.
Appellant-plaintiff, J.B. Nedd, filed his complaint seeking partition of five parcels of land in which he asserts his claim as the surviving spouse of Agnes Rubin Nedd, deceased. The Administrator de bonis non of the estate of Agnes Rubin Nedd, W.J. Oven, Jr., has been joined as a party plaintiff. Plaintiffs have appealed from the decree of the Chancellor dismissing their complaint.
The primary issue on this appeal is whether the conduct of the plaintiff Nedd, since his separation from his wife Agnes Rubin Nedd, was so reprehensible that he is precluded by applicable equitable doctrines from sharing in her estate.
The Chancellor made extensive findings of fact and conclusions of law in a memorandum opinion preceding his final decree. Plaintiffs take no exceptions to the facts as found by the Chancellor; however, they strenuously urge that he based his decree upon erroneous conclusions of law.
*523 Pertinent facts reflect:
That Agnes Rubin and J.B. Nedd were married on May 19, 1940, and cohabited together as husband and wife at Tallahassee, Florida, for about one and one-half years. The parties separated. Nedd claims to be a minister of the gospel and a traveling evangelist. After separating from Agnes, Nedd traveled around Florida for short periods and then began evangelizing in other states. In 1944, Nedd contracted a ceremonial marriage in Baltimore, Maryland, with another woman, and lived with her a month or two in the State of Ohio. He returned to Tallahassee for a short time in 1946, but after that year did not return to Tallahassee until 1957. He contracted another ceremonial marriage in Mississippi in the year 1955; he and his third bride lived in Oklahoma for awhile where this bride bore him a child. Nedd also lived in Texas. He traveled extensively in conducting evangelistic services, and when asked with whom he had had sexual relations other than the three women with whom he had gone through a ceremonial marriage, he stated he could not remember. The Chancellor found that the implication of the testimony revealed that Nedd's sexual relations with "other women" was a common occurrence.
Nedd returned to Tallahassee for about a month in 1957, during which time he visited Agnes and had sexual relations with her. At that time, Agnes was occupying the same house with another man named Lincoln with whom she was apparently living with all the features but none of the formalities of a valid marriage. Agnes died intestate as a result of a traffic accident on January 4, 1959. Although there was some evidence that Nedd again visited Agnes briefly in 1958, his next important appearance in Tallahassee was when he filed the complaint in the instant cause as Agnes' surviving spouse and claimed a one-half interest in her land, alleging that the other half is vested in Cato Gray, a son of Agnes sired by another man prior to the marriage of Agnes and Nedd.
As a sidelight, Cato Gray was convicted of murdering his grandmother [Agnes' mother] who died intestate leaving Agnes as her sole heir. Agnes in turn inherited a portion of the land involved, and since she died intestate, Cato inherited from her. Plaintiffs place great stress on the inequitable result of Cato eventually inheriting as a result of committing murder. We agree with the Chancellor's conclusions that such facts are not material to the issues and the parties involved.
The defendants claimed through various conveyances from Cato and judicial proceedings against him. It is clear that upon the institution of this suit that Cato had no interest in the lands involved. Therefore, the only other possible heir of Agnes, is Nedd, and his claim is grounded solely upon his being the surviving spouse of Agnes.
Salient conclusions of law found by the Chancellor are:
"From the foregoing facts it appears that the plaintiff Nedd and Agnes Rubin did become married to each other in May, 1940 and that this marriage had not been dissolved by divorce at the time of Agnes Rubin's death. Unless he is precluded by some equitable doctrine from asserting his rights, Nedd would be entitled to share equally with Kato Gray in the distribution of the estate of Agnes Rubin. In brief, as the surviving spouse, he and Gray, the only lineal descendant of Agnes, would constitute the heirs at law of Agnes.
"However, it is asserted that his conduct has been so reprehensible in his abandonment of the marriage relation with Agnes, his subsequent bigamous ceremonial marriages and his philandering practices as to create an estoppel against him to assert any rights growing out of the marriage to Agnes. It is also asserted that he does *524 not come into equity with clean hands and thus should be denied any relief for that reason.
"It is not necessary to dwell extensively on the conduct of Nedd who, while a purported minister and evangelist, apparently regarded marriage as a transitory relationship. His marriage to Agnes Nedd since about 1942 has been nothing. Neither party seems to have recognized that there was such a relationship and their conduct was certainly a complete repudiation of it.
"Whether the initial separation came about through the fault of Nedd or Agnes or both is not clear, and, in view of Agnes' death, could probably never be adjudicated even if the issue were material. All that appears is his testimony that she left him, but whether justified or not is unrevealed. There is no evidence that he contributed to her support or aided in the acquisition of her property. There is every suggestion and indication that he abandoned the marriage contract and relationship long before his wife's death.
"The effect of the holdings of Florida appellate courts in Doherty,[1] Perkins,[2] Kreisel,[3] and Quinn[4] is that adultery, or even a subsequent
bigamous marriage does not ipso facto estop a surviving spouse from asserting a right in or arising out of the estate of the deceased spouse or from claiming death benefits arising out of the relationship of husband and wife, but that misconduct of a flagrant and inexcusable character evincing an abandonment and repudiation of the marriage obligations will operate to estop one from enjoying such rights or may constitute a basis for application of the doctrine of unclean hands.
"With regard to applying the doctrine of unclean hands, such is discretionary with the chancellor and may be done when the misconduct of the plaintiff is connected with the matter in litigation, concerns the adverse party or parties, and is such as is condemned by honest and reasonable men. Landman v. Faber [Faber v. Landman], 123 So.2d 405 (CA 2d-1960) citing Miller v. Berry, 78 Fla. 98, 82 So. 764 and Roberts v. Roberts, (Fla. 1956), 84 So.2d 717. Those who seek to invoke the aid of a court of equity are not required to have led blameless lives and the doctrine of clean hands is not a judicial strait jacket. Roberts v. Roberts, supra. A chancellor is required to be tolerate [sic] of human weaknesses and errors and to not withhold decreeing enjoyment of rights because the litigant is less than a saint. However, when one calls upon a court of equity to enforce rights arising solely out of a marriage relationship in favor of one who has twice treated the marriage as no longer subsisting by the contracting of bigamous marriages followed by connubial cohabitation of substantial duration, and who has otherwise been a philanderer, he must also show some extenuating circumstance to explain or excuse such misconduct. None appears here. It is even more reprehensible when the party claims to be an active minister of the gospel called to teach and lead others to morality and righteousness. It is my view that this is a case where the doctrine of unclean hands is applicable and bars the Court from acting in favor of plaintiff Nedd.
"However, the case need not rest there, for the doctrine of estoppel is fully applicable. The plaintiff Nedd by *525 his abandonment of the marriage, his absence from the community in which his wife lived, and failure to promptly assert any obligations or rights to deal with her property or estate contributed substantially to circumstances which caused the defendants to be misled as to the status of the descent of Agnes' real estate. It contributed materially in her being able to misrepresent or permit to be misrepresented, her marital status through instruments which she executed or received and permitted to be made a matter of record. All of this works an equitable estoppel which would also bar any relief to plaintiff, Nedd. As to him the complaint shall be dismissed."
The conclusions of law reached by the Chancellor are supported by Doherty v. Traxler,[5] a case of first impression in Florida. There, one Doherty married Gertrude Baxley, for the acknowledged purpose of gaining control of her property. After staying on her farm only one night after the marriage and without consummating the marriage by cohabitation. Doherty departed for parts unknown. Some twenty years later, shortly after the death of Gertrude, Doherty returned and asserted his right of inheritance as the surviving spouse. After reviewing the evidence, the Court held that Doherty came into equity with unclean hands and by his actions and conduct was estopped from asserting any claim against the estate of Gertrude Baxley.
Kreisel v. Ingham[6] is the next case found in which the equitable doctrine of estoppel was asserted against a surviving spouse on the question of his right to inherit. There, the question was whether the sister or a husband would inherit the decedent's estate. The sister claimed that the surviving husband was estopped from inheriting since his deceased wife had secured a separate maintenance decree against him and that after becoming in arrears, the husband departed Miami and was not seen or heard of until after decedent's death some 14 years later. The District Court of Appeal, Second District, in an able opinion authored by Judge Allen, reviewed the holdings of other jurisdictions upon the subject and clearly outlined its reasons for finding that the facts therein did not come within the rule enunciated in Doherty v. Traxler, supra. The District Court observed that there had been no allegation of wrongdoing other than the non-payment of support money and that to sustain the contentions of the sister, the court would be saying in effect, that if a husband is living separate and apart from his wife under a decretal order granting maintenance and is delinquent in payment of same, that he would be barred from inheriting any of his wife's property. The facts outlined in the case at bar are clearly distinguishable.
The third and last Florida case arising in equity treating the subject matter of this suit is Quinn v. Miles.[7] There, the Chancellor found that the first wife failed to overcome the presumption of validity which exists in favor of a last marriage and held that the last marriage was valid. Judge Wigginton in reviewing the applicable principles of law relating to the sufficiency of evidence to overcome such presumption, stated:
"When tested in the light of the applicable principles of law as hereinabove recited the evidence revealed by this record clearly rebuts the presumption of validity which attaches to decedent's last marriage with appellee, Rosena Miles. We therefore hold that the chancellor erred * * *."
As to the facts outlined in Quinn, it is equally clear that the doctrine of equitable estoppel was not in issue on appeal as revealed *526 by the following statement found on page 884 of 124 So.2d:
"Upon consideration of the proofs adduced at the hearing before the court, the chancellor decreed * * * that plaintiff was not estopped to maintain this action, but since this ruling has not been assigned as error on appeal, its correctness will be presumed without further consideration." [Emphasis supplied.]
Consequently, the Quinn case is not applicable and the principles enunciated do not apply to the case at bar.
Therefore, the Chancellor was confronted with the single question of whether the facts adduced before him constituted an estoppel on the part of Nedd that brought him within the principles of the Doherty case, or whether such facts did not amount to an estoppel as set out in Kreisel. After a careful review of the record, we conclude that the Chancellor was correct in applying the equitable doctrines of unclean hands and estoppel to the facts in this cause, our conclusion being the same as reflected by Mr. Justice Mathews when he stated in the final part of his opinion in the Doherty case, viz.:
"This proceeding is in the nature of an equitable proceeding. The appellant comes into Court with unclean hands. He shows by his own testimony that he has openly, brazenly and flagrantly violated the laws of God and man and every principle of right, justice, decency, public policy and sound morals. For twenty years he lived happily (by his own admission) with his bigamous wife and is still living happily with her. He shows no shame and offers no excuse or apology. He now seeks the aid of a Court of conscience, in an equitable proceeding, to assist him in obtaining the fruits of a commercial venture which culminated in an uncompleted and unconsummated ceremony and which he abandoned for the joys and pleasures of a life of his own choosing. No Court should aid or assist him in such a nefarious scheme. Because of his conduct, as disclosed by this record, he is now and forever estopped and barred from asserting any right to be appointed administrator of the estate of Gertrude Hammond Baxley, deceased, or to inherit said estate."
We find that Nedd's conduct, as disclosed by this record, constitutes an estoppel preventing him from ever claiming any right, title or interest in the estate of Agnes Rubin Nedd, deceased.
The Administrator de bonis non assigns as grievous error the Chancellor's failure to partition the interest of decedent in real property. In support of this assertion he relies upon F.S. 733.01, F.S.A. which directs him to take possession of the decedent's real estate, and F.S. 733.02, F.S.A. which authorizes the administrator to bring a suit in partition against cotenants of the decedent.
The Chancellor in his conclusions of law stated:
"He [the administrator] is regarded as the trustee or agent, appointed by law, for the benefit and protection of the heirs and creditors of decedent. In re Wilson's Estate, 116 So.2d 440 (C.A. 2d-1959). The real estate of an intestate decedent becomes vested in the heir or heirs, subject to the right of possession of personal representative and his right to sell same with court approval, if needed to provide funds for payment of debts and other claims and charges against the estate. Redfearn, Wills and Administration in Fla. (3rd Ed.) Vol. 1, pp. 247-8.
"Thus, the plaintiff administrator is not strictly a cotenant with the defendants Starry, Williams and Carrin, but occupies a position somewhat different from that of one holding title to an undivided interest. His right to seek partition is not conferred in the same statute as cotenants as such, but in separate *527 provisions dealing with probate matters. Without the latter provisions such a right would not exist. See Sec. 86, Partition, 24 Fla.Jur. 307. The obvious purpose of granting this power to the personal representative for intestate estate is an aid to the administrator to discharge his duties to those having claims or charges against the estate. The only purpose then of a partition in this case would be to "bring to bag" (to borrow a hunter's expression) an asset which is or may be needed to pay claims and charges. There is no heir to consider insofar as these parcels are concerned as the sole descendant, Gray, has been divested of his title in favor of the defendants, and Nedd is estopped to claim as an heir.
"No evidence has been offered that there are any debts or claims against decedent's estate, or, if there are, that there are not sufficient assets of personalty to satisfy them. There is not shown a need for the possession of the property involved here to enable the administrator to fully discharge his duties. In the absence of such need a partition would be a mere gesture, as the personal administrator would be under a duty to redistribute the property to those claiming under Gray's interest who are the very defendants against whom partition is sought.
"The Court is not unmindful that partition is favored in equity and that one who holds an undivided interest in realty is entitled as of right to its exercise, unless the circumstances are such that manifest injustice or oppression will result if partition is granted. However, in such an extreme case the chancellor has the discretion to refuse to grant it. Condrey v. Condrey, Fla. (1957) 92 So.2d 423.
"It is the view of this Court that to grant partition would result in manifest injustice and oppression to the defendants. Even though Starry, and those claiming through him, derived their title pursuant to foreclosure of a mortgage executed by Gray long before Agnes's death and a sheriff's deed based on execution of a deficiency decree based on a debt contracted by Gray at the same time, the evidence shows that most of the negotiations and transactions with regard to such property were after Agnes' death. Such transactions were influenced materially by the circumstances then apparent which indicated that Gray was Agnes' sole heir and the person entitled to become administrator of her estate. Carrin was even more clearly misled as he dealt with those who were the closest of kin to Agnes who represented her as being unmarried at her death.
* * * * * *
"In this cause it has not been made to appear that it will be necessary to resort to the property involved to discharge the administrator's duties. On some of the parcels there have been substantial improvements. Moneys for taxes have been paid out. A partition would be an expensive, involved, tedious process, oppressive to the defendants and greatly disproportionate to any usefulness to the administration of decedent's estate.
"It thus appears that the prayer for partition in behalf of the plaintiff administrator should be denied.
"The validity of the defendant's claims under the Brown tax deed need not be considered in view of the other holdings in this cause."
We agree with the learned Chancellor's conclusions that the facts in this cause present such a case in which the Chancellor is well justified in refusing to grant partition.
Finding no error in the final decree appealed, same is hereby affirmed.
WIGGINTON, Acting Chief Judge, and STURGIS, J., concur.
NOTES
[1] Doherty v. Traxler, 66 So.2d 274 (Fla. 1953).
[2] Perkins v. Richards Constructors, Inc., 111 So.2d 494 (Fla.App.2d, 1959).
[3] Kreisel v. Ingham, 113 So.2d 205 (Fla. App.2d, 1959).
[4] Quinn v. Miles, 124 So.2d 883 (Fla.App. 1st, 1960).
[5] Doherty v. Traxler, See Footnote 1.
[6] Kreisel v. Ingham, See Footnote, 3.
[7] Quinn v. Miles, See Footnote 4.