128 So.2d 427 (1961)
Gladys KYLE, Appellant,
v.
V.I. KYLE, a/k/a DeValmont Ivan Kyle, a/k/a Valmont Ivan Kyle, Appellee.
No. 1834.
District Court of Appeal of Florida. Second District.
March 22, 1961.
Rehearing Denied April 18, 1961.
*428 McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for appellant.
Buckley & Bland, Fort Lauderdale, for appellee.
KANNER, Acting Chief Judge.
An antenuptial agreement entered into between the parties to this controversy at Montreal, Province of Quebec, Canada, and its effect upon a dower claim by the defendant as to lands subsequently acquired in Florida by the plaintiff comprised, in the main, the subject of the declaratory proceeding below. The court, upon plaintiff's motion, entered a summary final decree in favor of the plaintiff, V.I. Kyle, and the defendant, Gladys Kyle, has appealed.
The parties are, and were at the time of the antenuptial agreement on January 23, 1931, residents of and domiciled in the Province of Quebec. By its terms the antenuptial contract specified that they should be separate as to property; also that "There shall be no dower." It was provided that the husband during the marriage would pay to the wife the sum of $8,000 to be used by her for purchase of household furniture and movable effects in her name as her property and that the husband would pay to the wife during the marriage the sum of $15,000. Further provisions included a claim for the wife against the husband's estate in event of his death before payment of the named sums. In 1945, after fourteen years of marriage, the parties were separated from bed and board by order of a Canadian court. The husband has not paid the $15,000 sum called for by the antenuptial agreement.
Plaintiff and defendant signed the antenuptial contract with and in the presence of a notary public, as such, but without subscribing witnesses. The agreement was validly executed under the law of Canada.
Involved in this litigation are certain lots in Broward County, Florida, purchased by the plaintiff in 1955. Plaintiff decided to transfer title to these into a Florida corporation known as Kyle, Inc., but the defendant refused to join in the conveyance or to relinquish her dower, and the plaintiff instituted this declaratory action seeking a decree declaring that the antenuptial agreement is valid and binding and that defendant has thereby relinquished her dower in Florida real estate, making her joinder in any conveyance unnecessary.
In granting the summary final decree, the chancellor construed the antenuptial agreement to be valid under the Quebec Civil Code and not contrary to Florida public policy and so held that the defendant had released her dower interest in any property then or thereafter owned by the plaintiff, including the Florida lots in question.
Foundationally, the defendant urges that a Florida equity court should apply Florida law and not Canadian law when construing an antenuptial agreement which directly *429 affects a wife's dower right in Florida realty. Upon that premise, the defendant then asserts that since the agreement lacked two subscribing witnesses, it did not fulfill the Florida statutory prerequisite as to relinquishment of dower in realty.
Plaintiff, on the other hand, takes the position that the agreement should be construed under the law where the parties are domiciled and the contract made. Asserting that Florida has no statute governing specifically the execution of antenuptial agreements, plaintiff claims that section 693.02, Florida Statutes, F.S.A., concerning release of dower, has no legal effect as to agreements entered into by unmarried women. He cites instead the statute of frauds, section 725.01, Florida Statutes, F.S.A., with reference to its provision that no action shall be brought to charge any person upon an agreement made upon consideration of marriage unless the agreement or promise is in writing and signed by the party to be charged and points out that no mention is made of witnesses in this statute. We interpolate that the statute of frauds is not applicable here.
The problem before us for determination, as we view it, is whether the antenuptial agreement, validly executed in Canada without witnesses, should be deemed, by application of Canadian law, as operative in Florida with respect to dower in Florida realty.
Resolution of this question requires a choice of law in the face of a conflict of authorities. In general, the legal significance of the phrase, "lex loci contractus," is obscured under a plethora of conflicting judicial interpretations as to whether it indicates the law of the place of making, the place of performance, or the place intended by the parties. See 15 C.J.S. Conflict of Laws § 11, pp. 880-896, § 21b, p. 945; and Leflar, Conflict of Laws, section 123, p. 232. There is one area in which the authorities have largely achieved accord, however. When an instrument purports to convey title or an interest in real property which has its situs within a state, the formal validity and requirements of the document which seeks to affect the title to such property are governed by the lex rei sitae  the law of the state wherein the property is located. See 11 Am.Jur., Conflict of Laws, section 31, p. 331; 15 C.J.S. Conflict of Laws § 19b, p. 937, § 19c, p. 939, § 20c, p. 943, § 21c, p. 947; and Leflar, Conflict of Laws, section 140, p. 270.
Some authorities have indicated that, in determination of a choice of law, a particular contract is classified as either concerning land directly, or as being personal and only incidentally relating to land. Agreements falling into the latter category will be governed by the usual rules of contracts and will not be influenced by the lex rei sitae. When a contract executed in one state involves land in another, however, and the question arises whether such contract creates a right in rem in the land, it is ordinarily governed by the lex rei sitae. See 11 Am.Jur., Conflict of Laws, section 38, p. 335; Leflar, Conflict of Laws, section 144, p. 276; and 6 Fla.Jur., Conflict of Laws, sections 19 and 20, pp. 204-205. This premise is pertinent to an antenuptial contract relating to land situated elsewhere. See 11 Am.Jur., Conflict of Laws, section 54, p. 346; Annotation, 18 A.L.R.2d § 7, p. 778. For authorities to the contrary, see p. 779 of Annotation, supra. The dower interest in realty is generally within the purview and dominion of the state wherein the property has its situs. See 11 Am.Jur., Conflict of Laws, section 56, p. 347; and 28 C.J.S. Dower § 2, p. 66.
We have been dealing with general authorities, expressing principles and rules gathered from decisions of other jurisdictions that bear upon the problem with which we are confronted. These we must consider, together with certain Florida statutory enactments and judicial pronouncements concerning the choice of law that we should follow and apply. We turn now to the Florida statutes and cases.
As to statutory authority, section 693.02, Florida Statutes, F.S.A., provides that any married woman possessing a right of dower *430 in realty may relinquish it by joining in the conveyance or mortgage of it or by executing a separate instrument without joinder of her husband "in like manner as other conveyances." Section 689.01, Florida Statutes, F.S.A., pertaining to the manner in which real estate may be conveyed, provides that conveyances shall be by instrument in writing and signed by the person making the conveyance in the presence of two subscribing witnesses. Concerning specific performance against a married woman, section 708.07, Florida Statutes, F.S.A., provides that coverture shall not prevent a decree against a married woman to specifically perform her written agreement to relinquish her right of dower in the property of her husband.
Florida cases have interpreted these statutes. In Zimmerman v. Diedrich, Fla. 1957, 97 So.2d 120, it is seen that as a prerequisite to enforceability, the instrument must be signed in the presence of two subscribing witnesses if relinquishment of dower in realty is to be effected. See Also Tavel v. Guerin, 1935, 119 Fla. 624, 160 So. 665.
Also, cases of this jurisdiction have held that conveyances and contracts dealing with real property are controlled by the law of the jurisdiction within which the property lies. Thus, as to real estate or immovable property, one must look to the laws of the state where it is situated for the rules which govern its descent, alienation, and transfer and for the construction, validity, and effect of conveyances of the property. It is the same law to which one must look for the rules governing the capacity of the parties to such contracts or conveyances and their rights under them. No sovereign state, without express legislative sanction, is presumed to surrender to owners of immovable property within its limits the power to encumber or charge the title of it in any manner other than that prescribed by its laws. This is because the subject matter, as an immovable thing, is located beyond the control of any sovereignty other than that within the jurisdiction of which the title of the conveyance or lien is executed, and the parties to such conveyances are presumed to have contracted under laws of the jurisdiction within which the immovable thing is situated. Thomson v. Kyle, 1897, 39 Fla. 582, 23 So. 12. In that case a note and mortgage were executed in Alabama. The Supreme Court decided that the note was governed by Alabama law but that, since the realty was situated in Florida, the laws of Florida were applicable to the mortgage.
In the later cases of Connor v. Elliott, 1920, 79 Fla. 513, 85 So. 164; and Walling v. Christian & Craft Grocery Co., 1899, 41 Fla. 479, 27 So. 46, 47 L.R.A. 608, the principles enunciated in the Thomson v. Kyle case were reiterated. However, in the Connor case the court recognized that the validity as well as the interpretation of personal obligations executed and to be performed in one state will be controlled by the laws of that state when sought to be enforced through the courts of another state.
While we are not concerned with a devise of real property, it might be observed parenthetically that a will executed in another state, although comporting with the execution laws of that state, is not effectual to pass title to realty in Florida unless there has been a conformance with the statutory requirements of this state as to form and manner of execution. See Florida Statute § 731.07, F.S.A.; Trotter v. Van Pelt, 1940, 144 Fla. 517, 198 So. 215, 131 A.L.R. 1018; Crolly v. Clark, 1884, 20 Fla. 849; and 6 Fla.Jur., Conflict of Laws, section 33, p. 217.
Plaintiff argues that the case of Northern Trust Co. v. King, 1942, 149 Fla. 611, 6 So.2d 539, supports his position. On its face, that case does appear to have a similarity to the one here considered. It involved an antenuptial agreement executed in Illinois and held by the Florida Supreme Court to bar a wife's claim of dower in Florida property acquired by her husband after the marriage. However, we have *431 procured the original record of that case on file in the office of the Clerk of the Supreme Court of Florida and find that, although there the contract had not been witnessed, a material distinction does exist between it and the instant case. The property involved in the Northern Trust Co. v. King case was personal and movable and did not pertain to real estate or the laws governing the requisites of its transfer, including that of dower. As indicated, plaintiff's objective in instituting the present action is to accomplish transfer of real and immovable property from himself to his corporation. Further, the litigation in the Northern Trust case centered about the issue of whether or not the contract was ambiguous. So it is seen that, the factual similarity in other respects notwithstanding, the case is not here applicable.
Florida zealously maintains a traditional interest in preserving her sovereign and exclusive dominion over the lands located within her borders and has also evinced an abiding concern for the right of dower. The courts have kept vigil over the widow's right in this respect. Expressive of this is the statement by Lord Bacon of a common observation of his day that, "The law favored three things: Life, liberty and dower." Moore v. Price, 1929, 98 Fla. 276, 123 So. 768, 772; and 11 Fla.Jur., section 3, p. 32.
When we survey the authorities which weigh in favor of the law of the situs, together with the position of Florida as regards realty and dower, we are impelled to the conclusion that the subject matter of this proceeding, evolving from an antenuptial agreement, is not purely personal but has a direct relationship to certain real property in Florida and affects the title of it. It is our judgment that the antenuptial agreement entered into in Canada, due to the absence of two witnesses, does not effectively relinquish the wife's right of dower in the real property subsequently acquired by the husband in Florida.
So holding, we deem it unnecessary to deal with the other questions raised on this appeal. The decree of the court below is reversed and the cause is remanded to the chancellor for dismissal of the complaint.
Reversed.
SHANNON, J., and FUSSELL, CARROLL W., Associate Judge, concur.