**In the Matter of Isaac SILVERMAN, Bankrupt.**

**Bankruptcy No. 77 B 2988.**

United States Bankruptcy Court, S. D. New York.

Dec. 15, 1981.

Jeffrey L. Sapir, Yonkers, N. Y., for Trustee.

Kostelanetz & Ritholz, New York City, for respondent, Robert Silverman.

Baskin & Sears, New York City, for Isaac Silverman and Ralph Silverman.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Is an alleged bigamist bankrupt barred from benefiting from his bygone wife's intestacy? His son says yes, since he sees the trustee, as a successor, standing in the same shoes as his sire. It is argued that the trustee may wear the bankrupt's shoes, but he may not claim by inheritance the bed and house in Florida because the bankrupt would be estopped from asserting this right.

The trustee in bankruptcy seeks to impress a trust on a house in Miami, Florida owned by Mathilda Silverman, the first wife of the bankrupt, Isaac Silverman, who was adjudicated under the former Bankruptcy Act on May 12, 1978. The trustee asserts that the bankrupt, Isaac Silverman, is the surviving spouse of the decedent and is entitled to a distributive share in the Florida property owned by Mathilda Silverman when she died without a will. Robert Silverman, the son of Isaac and Mathilda Silverman, opposes the trustee's application, and is joined by his father, the bankrupt, in asserting that the bankrupt's subsequent conduct bars him and his trustee in bankruptcy from claiming any pecuniary gain from Mathilda's estate.

## FACTS

1. The bankrupt married Mathilda Silverman in 1939. During the course of their marriage they had four children, Ann (40 years old); Ralph (36 years old); Robert (34 years old) and Steven (20 years old).

2. In 1961, the bankrupt met Catherine Julia Morton, whom he thereafter wished to marry. In 1964, he visited Mexico for the purpose of obtaining a Mexican divorce. Mathilda did not physically appear in the Mexican proceeding. The bankrupt obtained a document purporting to be a divorce, which he displayed to Catherine Julia Morton in order to induce her to marry him, which she did on August 18, 1964. They subsequently had five children.

3. The Florida property was purchased in Mathilda Silverman's name in 1969. The bankrupt attended the closing with respect to the transaction.

4. On November 27, 1974, Mathilda Silverman died intestate in the City of New York. Their son, Ralph Silverman, obtained letters of administration from the Surrogate's Court, Bronx County, in April, 1978. Robert Silverman, another son of Isaac and Mathilda, applied to the Probate Court of Dade County, Florida, for appointment as Ancillary Administrator of Mathilda's es-

tate in Florida, and received his appointment on July 6, 1981.

5. The Respondent, Robert Silverman, filed an answer in this proceeding in which he recites the 1964 Mexican divorce procured by the bankrupt and alleges that the bankrupt was therefore not the surviving spouse of Mathilda Silverman when she died intestate on November 27, 1974.

6. The bankrupt filed an affidavit in opposition to the trustee's action and similarly cites his 1964 Mexican divorce as the basis for concluding that when Mathilda Silverman died in 1974, he was no longer her husband and not entitled to any interest in her estate.

7. During the trial of this proceeding, counsel for Respondent, Robert Silverman, announced that he had no proof that the so-called Mexican divorce decree was ever docketed or reflected in any judicial record in Mexico. He therefore conceded that the document had no validity whatsoever. Accordingly, he based his argument on the theory that the bankrupt, Isaac Silverman, should be deemed to have abandoned the decedent, Mathilda Silverman, when he married Catherine Julia Morton and fathered five children by her without the benefit of a valid divorce.

## DISCUSSION

### Failure to Plead Abandonment or Estoppel

The trustee argues that the Respondent waived the defenses of abandonment or estoppel because they were not affirmatively pleaded, as required by Rule 8(c) of the Federal Rules of Civil Procedure, and as adopted by Bankruptcy Rule 708. Respondent counters this point by asserting that the trustee cannot claim surprise because the core facts as to the bankrupt's conduct, whether recognizable as an abandonment, estoppel or unclean hands, were set forth as an affirmative defense.

However, the gist of the affirmative defense is that a valid divorce was granted by a judgment of the First Civil Court of the District of Bravos, State of Chihuahua, Republic of Mexico, terminating the marital relationship of Isaac and Mathilda Silverman. Accordingly, it is Respondent's position that Isaac Silverman was not the surviving spouse of decedent. There is no discussion of an estoppel theory; the defense is firmly based on the divorce decree itself.

At the hearing on the trustee's order to show cause for impressing a trust on the Florida real estate owned by Mathilda Silverman, Respondent's counsel stated that no verification of the entry of the divorce decree could be obtained by counsel in Mexico, who had requested a search of the files of the Mexican divorce court in order to obtain a certified copy of the divorce decree. The search failed to turn up any divorce decree entered under the docket numbers appearing on the divorce decree submitted as part of Respondent's Answer, nor did a search by name turn up any decree for an Isaac Silverman during 1964, and as a result Respondent's counsel believed they could not in good faith rely on the purported decree.

An affidavit from the Mexican court confirming the failure of the search for the decree was submitted on December 7, 1981 with Respondent's post-trial memorandum. Accordingly, as the divorce could not be relied on, Respondent's counsel had to shift gears to another defense theory.

In further support of his position that estoppel was properly pleaded, Respondent argues that Point II of their prior Memorandum of Law In Support of Respondent Robert Silverman (filed with the court on July 20) is captioned:

"THE BANKRUPT AND ALL IN PRIVITY WITH HIM, INCLUDING THE TRUSTEE IN BANKRUPTCY, SHOULD BE *ESTOPPED FROM ATTACKING THE DIVORCE* REGARDLESS OF ITS VALIDITY." (Emphasis Added).

Thus, Respondent reasons that trustee was on notice as early as July, 1981 that an estoppel defense would be invoked. However, it is important to note that all discussion of estoppel under Point II is couched in

terms of barring the trustee from attacking the validity of the extra-national divorce decree. There is no discussion of estoppel based on the conduct of Isaac Silverman. Thus, the only notice to the trustee of an estoppel defense was in conjunction with attacking the divorce decree, which was later discovered to be non-existent and was repudiated at the hearing by Respondent's own counsel.

Manifestly, there can be no theory of estoppel barring an attack on a divorce decree that does not exist. Therefore, it must be determined whether Respondent can claim that trustee had notice of a defense of estoppel based on Isaac Silverman's *conduct.*

At page 18 of Respondent's Post-Trial Memorandum, it is stated:

"Regardless of what legal doctrine is applied to characterize the conduct of Isaac Silverman—whether abandonment, estoppel or unclean hands—the trustee cannot reasonably claim surprise as to the factual inquiry made at the October 13, 1981 hearing."** [asterisks denote footnote]

"**In any event, under the law of the State of Florida, abandonment is a species of the doctrines of estoppel and unclean hands. See *Doherty v. Traxler,* supra, 66 So.2d at 277; *Nedd v. Starry,* supra, 143 So.2d at 524 ..."

Although these cases support Respondent's argument in that they do discuss abandonment in terms of estoppel and unclean hands, they can hardly serve as sufficient notice to the trustee of an intention to invoke a defense of estoppel based on conduct, as they were not raised in the Pre-Trial July 18 Memorandum, but only in the Post-Trial Memorandum submitted after the hearing. Therefore, one must look to the transcript of the October 13th hearing to study Respondent's claim that FRCP (15)(b) would apply. The rule states:

"(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. *If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely* when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence." (Emphasis added).

Respondent submits that the issues were tried by consent.

After informing the court that Respondent would not be relying on the purported divorce decree, Respondent's counsel states, "we feel compelled to seek leave of the court to amend Respondent, Robert Silverman's answer, so as not to rely on the validity of the judgment of divorce appended to the answer." (Trans. p. 58)

Counsel for the Respondent also stated: "Under both New York and Florida law, Isaac Silverman's conduct bars him from taking, as a distributee, from the estate of Mathilda Silverman, and these facts, I believe will be elicited." (Trans. p. 59) It must be determined whether the comments of the trustee's counsel can be characterized as a formal objection to the evidence concerning estoppel and abandonment on the ground that these issues were not covered by Respondent's affirmative defense pleadings.

He states that the comments of Respondent's counsel informing the court of the shift in focus of Respondent's case was their first indication that the divorce decree would no longer be the basis for Respondent's defense (surprise), but he made no statement actually objecting to the defense of estoppel and abandonment.

If not viewed as an objection in the real sense of the word, then there is a good case for concluding that the pleadings were tried by implied consent, especially since later statements were made specifically naming the estoppel and abandonment theories to which no objection was interposed. Indeed, counsel for the Respondent orally sought leave of the court at the hearing to amend his answer so as to include a defense that the bankrupt abandoned the decedent. The court, accepted the Respondent's explanation that he did not expect to rely on the purported Mexican divorce decree and that he relied instead on the theory that the bankrupt's conduct barred him from benefiting from the decedent's estate. Since the court permitted the Respondent to proceed on this theory, a formal amendment of the answer would have been appropriate.

Although no formal amendment was submitted by the Respondent, both sides submitted post-trial memoranda with respect to the issue of estoppel. Clearly the parties had ample opportunity to explore this issue and say all that could be said regarding this point. The trustee was not prejudiced by the absence of a formal amendment of the Respondent's pleading, especially since the dropping of the Mexican divorce defense simply meant there was one less legal theory upon which the Respondent could rely. Therefore, this court will not preclude the Respondent from reliance upon the defense of estoppel growing out of the bankrupt's conduct. (See, *Moore's Manual: Federal Practice And Procedure*, Volume 1 § 9.09[8], p. 9–45).

### The Trustee Stands in the Bankrupt's Shoes

■ In asserting the bankrupt's right to inherit from his deceased first wife, the trustee relies on § 70(a)(5) of the former Bankruptcy Act, which provides that a trustee is vested as of the date of the filing of the petition with the bankrupt's

"... property, including rights of action which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered ...".

In succeeding to the bankrupt's rights, the trustee is also "subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition." *Bank of Marin v. John England, Trustee in Bankruptcy*, 385 U.S. 99 at 100, 87 S.Ct. 274, at 275, 17 L.Ed.2d 197 (1966). Thus, the wrongdoing of a bankrupt is a defense to a claim asserted by his trustee in bankruptcy. *Miller v. New York Produce Exchange*, 550 F.2d 762 (2d Cir. 1977); 4A *Collier on Bankruptcy*, § 70.28, p. 385 (Fourteenth Edition). Since the trustee in bankruptcy stands in Isaac Silverman's shoes, and is claiming the Florida real estate by intestacy, he is subject to all defenses that the estate of the bankrupt's deceased wife might properly assert against him.

### Applicable Law

■ The decedent, Mathilda Silverman, died intestate while a resident of the City of New York. Under New York's Estates, Powers & Trusts Law it is stated under § 3–5.1(b)(1):

"... real property, and the manner in which such property descends when not disposed by Will, are determined by the law of the jurisdiction in which the land is situated."

Since the property in question is located in Florida, the law of that state must be considered. This is in accord with the language in the *Restatement (Second) of Conflicts of Laws*, which reads as follows:

"§ 236 *Intestate succession to land*

(1) The devolution of interests in land upon the death of the owner intestate is determined by the law that would be applied by the courts of the situs.

(2) These courts would usually apply their own local law in determining such questions.

Thus, the law of the situs determines not only who is an heir, but also the interest which he takes. See 23 *American Jurisprudence* 2d § 29, pp. 765, 766. New York

agrees with this interpretation. *In re Vicedominis Estate*, 195 Misc. 1057, 91 N.Y.S.2d 472 (1949); *In re Bassford's Will*, 127 N.Y. S.2d 653 (1953). The Florida rule is also in accord with this principle. See *Kyle v. Kyle*, 128 So.2d 427, (Fla.App.) cert. discharged, 139 So.2d 885 (Fla.1962).

■ If there is any question as to the "status" of a surviving spouse or his right to an interest in a deceased's estate, Florida has a procedure whereby the County Judge's Court has the exclusive jurisdiction to determine "who are the distributees, legatees or beneficiaries of the property of a decedent and the amounts and shares to which each may be entitled." *In re Monk's Estate*, 155 Fla. 240, 19 So.2d 796, 798 (1944), *In re Ruff's Estate*, 159 Fla. 777, 32 So.2d 840 (1948).

The statutory authority for this proceeding is contained in section 733.105 of the Florida Probate Code, and section 734.25 of Florida's former probate laws. The Florida Probate Code was not effective until January 1, 1976. Section 731.011 states:

"The Florida Probate Code shall become effective on January 1, 1976. The substantive rights of all persons that have vested prior to January 1, 1976 shall be determined as provided in former Chapters 731–737 and Chapters 744–746 as they exist prior to January 1, 1976. *The procedures for the enforcement of substantive rights that have vested before January 1, 1976, shall be as provided in this code.*" (Emphasis added).

Thus, assuming this proceeding would be viewed as a procedure for enforcement of substantive rights vesting prior to January 1, 1976, the current Florida Probate Code section would apply to the case at bar.

### Estoppel to Obtain Pecuniary Gain

The courts in Florida have not sharply delineated the rights of an erring spouse to inherit from his or her deceased spouse's estate. It is stated in 26A *Corpus Juris Secundum, Descent and Distribution,* § 59(b) as follows:

"As a general rule, unless a statute provides otherwise, the fact that one spouse has been guilty of abandonment or adultery, or the fact that the husband failed to support his wife, does not bar the right of the erring spouse to succeed to the other's estate."

This language is quoted with approval by the District Court of Florida in *Kreisel v. Ingham*, 113 So.2d 205 (1959). This case also cited a Maryland case, *Schmeizl v. Schmeizl*, 186 Md. 371, 46 A.2d 619 (1946), which held that adultery was no bar to inheritance. The Maryland case cited a Georgia case, *Brown v. Parks*, 169 Ga. 712, 151 S.E. 340 (1930), which held that a spouse's bigamy was no bar to inheritance because the bigamous marriage was void and the status of the surviving spouse continued as such.

Notwithstanding the foregoing line of cases, a Florida court, in *Doherty v. Traxler*, 66 So.2d 274 (1953) held that a husband who left his wife shortly after a marriage that was never consummated and bigamously married another woman could not claim the estate of his first wife because his unclean hands equitably estopped him from an inheritance. Similarly, in *Nedd v. Starry*, 143 So.2d 522 (Fla.App. 1st 1962) it was held that flagrant misconduct evincing abandonment and repudiation of marriage obligations constitute unclean hands barring a husband from inheriting from his deceased spouse. A similar result was reflected by a Florida court in *In re Moye's Estate*, 160 So.2d 525 (Fla.App.1964).

Whether or not the trustee in bankruptcy may impress a trust upon the Florida real estate will depend upon a determination that the bankrupt in fact has a right under Florida law to inherit from his first wife after marrying his second wife without a valid divorce decree.

A condition precedent to the ascertainment of this right is the submission of a claim to the Florida County's Judge's Court in accordance with its statutory procedure for ascertaining the rights of beneficiaries of intestate interests in Florida real estate.

### CONCLUSION OF LAW

This court is not the appropriate forum to determine whether the bankrupt's conduct

was so flagrant as to be deprived under Florida law from inheriting the Florida real estate from his deceased wife, Mathilda Silverman. If the appropriate Florida court determines that the trustee, standing in the bankrupt's shoes, has a right to receive an intestate share in Mathilda Silverman's Florida real estate, this court will then be in a position to entertain the trustee's action to impress a trust on the intestate share. If the appropriate Florida court determines that the bankrupt, and therefore the trustee, does not have a right to the distribution of an intestate share in Mathilda Silverman's Florida real estate, the action to impress a trust on such share will be academic. The trustee should therefore submit his claim with respect to the Florida real estate to the appropriate Florida court in accordance with the statutory procedure prescribed for ascertaining distributive shares of intestate real estate in Florida. The trustee's application is therefore denied, without prejudice.