**In re Isaac SILVERMAN, Bankrupt.**

**Bankruptcy No. 77 B 2988.**

United States Bankruptcy Court,
S.D. New York.

Aug. 19, 1987.

Arthur S. Rosenfeld, White Plains, N.Y., trustee and special counsel.

Jeffrey L. Sapir, Hartsdale, N.Y., for trustee.

Weil, Gotshal & Manges, New York City, for Leucadia, Inc.; Martin J. Bienenstock, of counsel.

Barr & Faerber, Spring Valley, N.Y., for Isaac Silverman; Harvey S. Barr, of counsel.

### DECISION ON OBJECTIONS TO APPLICATIONS FOR FEES

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Applications for final allowance were made by the trustee in bankruptcy, his counsel and by the trustee who was authorized to retain himself as special counsel to attempt to negotiate settlements in what appeared to be a no-asset bankruptcy case under the former Bankruptcy Act of 1898.

The bankrupt, Isaac Silverman, had originally filed a petition for a real estate arrangement under Chapter XII of the former Bankruptcy Act on December 23, 1977, which was aborted by an adjudication in bankruptcy on May 12, 1978, at which time Arthur Rosenfeld was appointed as the trustee in bankruptcy. Leucadia Inc.,

which acquired the real estate assets of James Talcott, Inc., held a blanket mortgage against the bankrupt's properties in Westchester County, New York and against three properties owned by the bankrupt in New York City. Additionally, Leucadia also obtained an assignment from Chase Manhattan Realty Trust of a mortgage on the Westchester properties superior to the blanket mortgage. After foreclosing on the various mortgages, Leucadia obtained a deficiency judgment against the bankrupt in the sum of $10,140,139.64. The bankrupt objected to Leucadia's unsecured claim and attempted to establish that there was a surplus available to the estate so that he had standing to file an objection to the claim. This court concluded that there was no merit to the bankrupt's position that a surplus existed and ruled that a bankrupt may object to creditors' claims only in cases where there was no trustee who could properly object or where a disallowance of the claim objected to would produce a surplus for the bankrupt. *In re Silverman*, 10 B.R. 734 (Bankr.S.D.N.Y. 1981) *aff'd* 37 B.R. 200 (S.D.N.Y.1982, Sweet, D.J.).

Leucadia's secured claim exceeded eighteen million dollars. There was a determination by this court that there was no equity for unsecured creditors. The trustee in bankruptcy had insufficient funds to pay taxes or to maintain the mortgage payments. Accordingly, the trustee obtained court authorization to sell his interest to Leucadia for $10,000 and to deliver a release to Leucadia of all causes of action or defenses which the trustee might have with respect to the foreclosure actions or Leucadia's liens against the properties in question. The trustee had retained an accountant to determine whether or not the estate might have a claim against Leucadia for usury. The accountant examined what records were available with the result that the trustee concluded that he had no basis for asserting any claims against Leucadia. The Leucadia advances (then known as Talcott) were made to corporations controlled by the bankrupt. After the advances, the bankrupt reconveyed the mortgaged real estate to himself, personally. Accordingly,

the estate ultimately consisted of the $10,000 that Leucadia paid to the trustee for his assignment of his interest in the secured properties.

The trustee had little cooperation and much opposition from the bankrupt, whose discharge was denied by this court for his failure to keep any financial records as to his personal affairs or as to the whereabouts of the amounts he withdrew from his business and his refusal to obey five previous orders of this court. *In re Silverman*, 10 B.R. 727 (Bankr.S.D.N.Y.1981).

The trustee attempted to impress a trust on certain real estate owned by the bankrupt's first wife in Florida when she died. However, the bankrupt argued that the trustee could only stand in the bankrupt's shoes and that the bankrupt could not inherit from his wife because he was a bigamist and that he married his second wife and had children by her without the benefit of a divorce from the first wife. Accordingly, the bankrupt argued that his children by his first wife should inherit the Florida property. This court ruled that a bigamist's right to inherit from his wife was controlled by Florida law and that the trustee should submit his claim with respect to the Florida real estate in Surrogate's Court in Florida. *In re Silverman*, 15 B.R. 843 (Bankr.S.D.N.Y.1981). The trustee ultimately settled this claim for approximately $8,000.

The trustee filed a complaint with this court on June 1, 1983, seeking an order declaring that Silverman Holding Corporation, a corporation of which the bankrupt's children were principal shareholders, was an alter ego of the bankrupt and that the assets of this corporation were property of the estate. The trustee sought to pierce the corporate veil for the benefit of the estate.

The trustee also attempted to assert an interest in a loft building located at 122 East 25th Street, New York City. The bankrupt did not list this building as an asset when the Chapter XII was filed. He later claimed ownership of the property by conveyance from a corporation called Grand-White Realty Corp., which did own

this building. On July 6, 1977, prior to the filing of the Chapter XII petition, the City of New York had commenced an *in rem* foreclosure action against the loft building for unpaid real estate taxes. An *in rem* foreclosure judgment was entered against the building on May 10, 1978. The property was sold for $1,575,000, and after the payment of the taxes due New York City, there remained a surplus of approximately $1,300,000.

The 122 Corp., in which the bankrupt's children had an interest, purported to hold a mortgage against the property and claimed the surplus to the extent of the mortgage. The City claimed the surplus as a windfall under its tax foreclosure. The trustee in bankruptcy claimed an interest in the proceeds because during the course of the bankruptcy proceeding, in September of 1980, the bankrupt produced an unrecorded deed purporting to convey the property to himself from Grand-White Realty Corp. Meanwhile, the mortgagee, 122 Corp., had commenced an action against the City of New York in the New York Supreme Court to overturn the *in rem* foreclosure judgment, on the theory that the mortgagee's rights were superior to those of the bankrupt and that the City obtained the property subject to the mortgage. This court had ruled that the trustee's interest was wiped out as a result of the City's *in rem* foreclosure action. *In re Silverman*, 45 B.R. 892 (Bankr.S.D.N.Y. 1985). Thus, the amount that the City realized from the sale in excess of its tax claim constituted a profit to the City arising out of its ownership of the property, which the City could keep without offending the distribution scheme under the Bankruptcy Act because the profit was not part of the bankruptcy estate.

Accordingly, the trustee had an estate which could pay nothing to unsecured creditors. Instead of giving up, the trustee, acting as his own special counsel, as authorized by this court, attempted to produce an estate from nothing. He pursued negotiations with the City of New York and the mortgagee and ultimately obtained a settlement, notwithstanding his shaky legal position. All of the trustee's claims against corporations involving the bankrupt's children were also settled pursuant to an agreement approved by this court on August 29, 1986. As a result of this settlement, negotiated by the special counsel, the estate received $860,000 from the City of New York, of which $244,443 was paid to the mortgagee in settlement of its claim.

Additionally, the special counsel negotiated a sale of a mortgage held by Silverman Holding Corporation, which was claimed to be the bankrupt's alter ego. The mortgage of $500,000 paid no amortization and paid interest of 9% per annum. The mortgage by its terms terminated on June 30, 1983. Special counsel ultimately located an interested purchaser in Los Angeles who was willing to offer $400,000 in cash, without any brokerage commissions incurred by the estate. Pursuant to the settlement, these funds also came into the estate.

The net result of the efforts expended by Arthur Rosenfeld, as trustee and as special counsel, and by Jeffrey Sapir, as counsel for the trustee, is that what would have been a non-dividend estate will now yield a gross amount of over $1,100,000.

Leucadia, which holds an allowed unsecured deficiency claim of $10,140,139.64, out of the total allowed claims of $11,493,-330.98, represents approximately 88% of the unsecured claims. Leucadia stands to benefit the most from the efforts of the trustee, the special counsel and counsel for the trustee in producing an estate of over $1,100,000, when at the outset it appeared that there were no funds available to support the administration of this estate. Leucadia urges that this court grant the applications for commissions and allowances in full because the trustee and his counsel proceeded at their own risk, in the face of a nominal asset estate, to produce a fund for distribution to the unsecured creditors.

The nondischarged bankrupt, Isaac Silverman, objects to the applications for allowances and argues that in the spirit of economy that should prevail in cases under the former Bankruptcy Act, this court should reduce the sums sought. Although the bankrupt's standing to object to claims

in this case has already been denied, this court allowed the bankrupt's counsel to present his position, because notwithstanding the issue of standing, this court must make an independent determination with regard to fees. Accordingly, all interested parties in this case may be heard to present their views, which the court will consider in arriving at its own estimation of the value of the professional services performed for this estate.

■ Arthur Rosenfeld, as trustee, has served this estate in that capacity for nearly ten years. He is entitled to receive maximum statutory commissions which amount to $43,887.97. Having previously received commissions totalling $47,663.56, he shall refund the excess, namely $3,775.59. This amount may be deducted from the sum he is entitled to receive as special counsel for the trustee.

■ Jeffrey Sapir, as counsel for the trustee, has performed his legal services for this estate in a most professional and competent manner. His application values his legal services at $50,430. However, in the settlement approved by this court, Mr. Sapir agreed not to seek more than $50,000 in counsel fees. Accordingly, Mr. Sapir shall be allowed the sum of $50,000 for his services, which this court finds to be fair and reasonable.

■ Arthur Rosenfeld, was authorized by the court to retain himself as special counsel for the trustee in order to make available his legal expertise in real estate law in an effort to produce some assets from what appeared to be a no-dividend estate, especially after New York City prevailed with respect to the surplus in the *in rem* foreclosure action concerning the building located at 122 East 25th Street, New York City. In view of the fact that this is a case under the former Bankruptcy Act, this court was involved in the administrative aspects in this case, as distinguished from the court's noninvolvement in the administrative affairs of a case under the current Bankruptcy Code. Accordingly, the court is familiar with Mr. Rosenfeld's herculean efforts as special counsel in this case, which has been before this

court for nearly ten years. The litigation time was substantial and Mr. Rosenfeld's activities in this case involved almost daily appearances in this court and discussions with the Clerk of the court with respect to administrative matters. His indefatigable efforts ultimately yielded results. He had to prevail upon Leucadia, the bankrupt's counsel, counsel for the bankrupt's children and counsel for the City of New York in order to arrive finally at a closely negotiated settlement which produced a payment to the estate from the City of New York in the sum of $860,000. For his services as special counsel to the trustee, Mr. Rosenfeld seeks an allowance of $200,000. Leucadia, the largest unsecured creditor in this case holding approximately 88% of the allowed unsecured claims, strongly urges that this application should be allowed in full, notwithstanding that Leucadia's interest will bear approximately 88% of this application. Leucadia recognizes that the efforts of Mr. Rosenfeld, as special counsel, created this estate and that Mr. Rosenfeld commenced his activities with the knowledge that the risk was great, in that there was a strong chance that there would be no funds available to compensate him for his services unless he succeeded in bringing sufficient funds into this estate. Leucadia argues that such services, in the light of the risk involved, should be rewarded, even though most of the award will come from Leucadia's unsecured share of this estate.

In determining fees under the Bankruptcy Act, the courts generally consider the twelve factors delineated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974), namely:

1. The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the

case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

The court is mindful of the fact that estates must be administered as efficiently as possible and that the spirit of economy must prevail. However, this does not mean the court should be parsimonious, because a false economy would discourage competent counsel from providing legal services to bankruptcy estates, especially where the creditors recommend the requested fee. *Jacobowitz v. Double Seven Corp.*, 378 F.2d 405, 408 (9th Cir.1967). The court must not only evaluate the services performed on the basis of time expended, but also on the basis of an assessment of the value of the services. *In re First Colonial Corp. of America*, 544 F.2d 1291, 1300 (5th Cir.1977), *cert. denied* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). The Second Circuit has expressed its view of the evaluation process as follows:

> The principal factors which enter into a determination of what is reasonable are the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered, the results obtained and the "economic spirit" of the Bankruptcy Act to curtail unnecessary expenses.

*In re Paramount Merrick, Inc.*, 252 F.2d 482, 485 (2d Cir.1958). *Accord In re Mabson Lumber Co.*, 394 F.2d 23, 25 (2d Cir. 1968).

In the present case, special counsel for the trustee commenced his activities at a time when there were no funds sufficient to support a distribution to unsecured creditors. His skill and tenacity over the years finally bore fruit. He produced an estate of over $1,100,000. The results achieved; the fact that special counsel's position was contested by many competent private attorneys, as well as the corporation counsel of the City of New York; the fact that he was required to attempt to pierce the veil of corporations formed by the bankrupt to shield assets from creditors of this estate; coupled with the fact that much litigation ensued before the special counsel was able to effect a skillful settlement, are all important factors which this court must weight in exercising its discretion with regard to the ascertainment of counsel fees. Moreover, the reasonableness of special counsel's application is supported by Leucadia, the largest unsecured creditor of this estate, which will ultimately bear approximately 88% of any amount awarded.

The risk factor was great, the opposition encountered by the special counsel throughout the years during which this case was administered was heated, the intricacy of the legal questions encountered required the exercise of legal skill to counter the hurdles presented and the results obtained justify the amount sought by the special counsel. After considering all of the pertinent factors applicable to the determination of the allowance requested, this court concludes that the sum of $200,000 sought by the special counsel is fair and reasonable compensation for the legal services he provided to this estate in producing an unsecured fund in excess of $1,100,000. Accordingly, special counsel is allowed the sum of $200,000 as his compensation for his services in this case.

The books and records claimed by the bankrupt may be abandoned to him.

SUBMIT ORDER in accordance with the foregoing findings and conclusions.