### TOWN OF AGAWAM v. CONNORS et al.
#### No. 4187.

Circuit Court of Appeals, First Circuit.
Jan. 7, 1947.
Writ of Certiorari Denied March 31, 1947.
See 67 S.Ct. 1086.

Donald M. Macaulay, of Springfield, Mass., for appellant.

David J. Cohen, and Edward J. Flavin, both of Boston, Mass., for appellee Connors, trustee.

Before MAHONEY, GOODRICH (sitting by special assignment) and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This is an appeal by the Town of Agawam from the affirmance by the district court of two orders of the referee in bankruptcy which (1) allowed the trustee in bankruptcy's petition to sell the bankrupt's assets free and clear of liens and the transference of the liens to the sale proceeds, and (2) denied the Town's petition to vacate a temporary restraining order.

The Agawam Racing and Breeder's Association, Inc., the bankrupt, owned and operated a race track in the Town of Agawam, Massachusetts. The last racing meet was concluded in 1938 since in that year the voters of Hampden County, where the track was located, voted to permit no further racing in the county. Local taxes assessed for the year 1938 and all subsequent years have remained unpaid; and assessments for such years have remained substantially the same as when the track was in operation.

Because of the failure of the Racing Association to pay its 1938 taxes, the Collector of the Town, on August 23, 1939, by virtue of Massachusetts General Laws (Ter.Ed.) c. 60, §§ 53 and 54,[1] gave a tax collector's deed for these lands to the Town. The instruments of taking were duly recorded within the time specified. The Racing Association retained a statutory right of redemption and, it appears, remained in possession of the racing plant. On November 26, 1941, after the expiration of more than two years, the Town filed, in the Land Court of the Commonwealth of Massachusetts, petitions to foreclose the Racing Association's right of redemption in the manner prescribed by the statute.[2]

The Racing Association appeared therein and answered praying for further time in which to redeem. Hearings were continued from time to time until June 29, 1943, when a motion for final decree was allowed unless redemption was made on or before September 23, 1943. This time for

---

[1] Section 53. "If a tax on land is not paid within fourteen days after demand therefor and remains unpaid at the date of taking, the collector may take such land for the town * * *".

Section 54. " * * * Such an instrument of taking shall not be valid unless recorded within sixty days of the date of taking. If so recorded it shall be prima facie evidence of all facts essential to the validity of the title so taken * * *. Title to the land so taken shall thereupon vest in the town, subject to the right of redemption. Such title shall, until redemption or until the right of redemption is foreclosed as hereinafter provided, be held as security for the repayment of said taxes with all intervening costs * * *". (As amended Mass. Acts (1933) c. 325, § 7.)

[2] Mass.Gen.Laws (Ter.Ed.) c. 60, Section 65. "After two years from a sale or taking of land for taxes, . . . whoever then holds the title thereby acquired may bring a petition in the land court for the foreclosure of all rights of redemption thereunder."

The Land Court is vested by statute with exclusive jurisdiction over these proceedings and its decree grants an absolute title in the town after foreclosure of the right of redemption. Mass.Gen.Laws (Ter.Ed.) c. 60, Section 64. "The title conveyed by a tax collector's deed or by a taking of land for taxes shall be absolute after foreclosure of the right of redemption by decree of the land court as provided in this chapter. The land court shall have exclusive jurisdiction of the foreclosure of all rights of redemption from titles conveyed by a tax collector's deed or a taking of land for taxes, in a proceeding provided for in sections sixty-five to seventy-five, inclusive."

redemption was extended by stipulation [3] several times, the last time until June 19, 1944, when a motion for final decree was filed and continued to July 14, 1944, at 12 o'clock noon.

On July 14, 1944, at 9:50 A.M.—two hours and ten minutes before the assigned hearing in the Land Court—the Racing Association was adjudicated a voluntary bankrupt. The case was immediately referred to a referee in bankruptcy, who although refusing to issue an order restraining the Town from proceeding with its motion in the Land Court for final decree, did write a letter to counsel for the Town notifying them of the adjudication in bankruptcy and suggesting that further proceedings in the Land Court be held in abeyance temporarily. A copy of this letter was sent to the Judge of the Land Court. Notwithstanding this actual notice of the adjudication in bankruptcy, the Land Court proceeded to a hearing and allowed the motion for a final decree but no decree was entered on that date. On July 19, 1944, the referee issued a temporary restraining order enjoining the officials of the town from seeking a final decree from the Land Court and enjoining them from any attempt to alienate or transfer the property in question. On the same day the receiver filed in the Land Court a formal notice of adjudication and a petition to stay proceedings in the case. After a full hearing on July 21, the petition to stay was denied and a final decree foreclosing the right of redemption was entered.

The Racing Association filed an appeal from the order of the Land Court denying a stay of the proceedings but failed to perfect such appeal, relying upon the assurance of counsel for the Town that the outcome of pending compromise proceedings would be acceptable to the Town. In fact the compromise was accepted by the Town at a Town Meeting on February 20, 1945, but later, on July 24, 1945, was repudiated at another Town Meeting.

After more fruitless attempts to compromise the tax claims, the trustee in bankruptcy on October 2, 1945, filed a petition in the bankruptcy court for leave to sell assets free and clear of liens and to transfer such liens and rights to the proceeds of sale. The trustee contended and the district judge found that the racing plant had a substantial value in excess of the Town's tax claims. The Town of Agawam, without submitting to the jurisdiction of the Bankruptcy Court, appeared and answered that it held not a tax lien to the real estate in question but full title by reason of the decree of the Land Court, thus challenging the jurisdiction of the Bankruptcy Court to order a sale as petitioned by the trustee. Moreover, it denied the power of the Bankruptcy Court to interfere with the jurisdiction of the Land Court in the proceedings in which the right of redemption was foreclosed and an absolute title declared to be in the Town. In a separate petition filed on January 8, 1946, the Town prayed that the referee's temporary restraining order be vacated.

The referee in his findings and opinions dated February 5, 1946, allowed the trustee's petition for leave to sell and denied the petition of the Town to vacate the restraining order basing his decision upon the paramount jurisdiction of a Federal Court of Bankruptcy. The district court affirmed the action of the referee, whereupon the Town has appealed.

In the course of his opinion the district judge referred to prior reorganization proceedings under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, concerning the present bankrupt. He indicated that such a petition had been filed in 1935 and an order confirming the plan of reorganization entered in December, 1937, but that no final decree had ever been entered. Since the fact of termination or pendency of these reorganization proceedings was thus in doubt, we requested counsel to submit additional memoranda including docket entries to inform us of the

---

[3] The Referee found that during this period the Racing Association was striving to obtain from the Town a compromise in the amount of the assessed taxes, since they claimed that assessments made in 1939, 1940 and 1941 on a valuation substantially equivalent to that assessed in 1938 when the track was in operation were unjust and oppressive.

present status of those proceedings and their effect, if any, on the subsequent proceedings in the Land Court. From such memoranda as submitted we learn that the Racing Association's petition for corporate reorganization was filed on December 27, 1935. Such petition was approved and the debtor continued in possession. A plan of reorganization was confirmed on December 27, 1937. Supporting documents indicate and the Town states that this plan was consummated before July 1, 1938. This fact does not appear controverted by the Racing Association, although both parties agree that no final decree was ever entered. Our question, therefore, is whether or not the jurisdiction of the Bankruptcy Court in the reorganization proceedings terminated inasmuch as no final decree was ever entered. If they had not terminated, serious doubt would exist as to the ability of the Land Court to assume jurisdiction over property under the jurisdiction and control of the Federal Court in reorganization proceedings. We conclude from an appraisal of the authorities cited to us that termination of jurisdiction in such a case need not await the entry of a final decree and that confirmation and consummation of the plan of reorganization suffice to effect a release of the reorganized corporation's property from the jurisdiction of the bankruptcy court. See North American Car Corp. v. Peerless Weighing & Vending Mach. Corp., 2 Cir., 1944, 143 F.2d 938, 941; Reese v. Beacon Hotel Corp., 2 Cir., 1945, 149 F.2d 610, 611. Consequently the jurisdiction of the Land Court was unfettered by any prior jurisdiction as a result of the reorganization proceedings.

 Both the referee and the district judge relied for their decisions on the paramount jurisdiction of the Bankruptcy Court. The Constitution (Art. 1, Sec. 8, cl. 4) does vest Congress with paramount authority to make uniform laws concerning bankruptcies. When Congress enacts a bankruptcy act that law is therefore supreme and, when the courts exercise jurisdiction conferred upon them by such a statute, they are exercising a paramount and exclusive jurisdiction. But it is necessary that the jurisdiction so exercised be one within the powers conferred upon the courts and within the terms of the statute. Both Isaacs v. Hobbs Tie & Timber Co., 1931, 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645 and Gross v. Irving Trust Co., 1933, 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215 speak of the Bankruptcy Court's paramount and exclusive jurisdiction to deal with the property of the bankrupt which upon adjudication vests in the trustee in bankruptcy. But the Isaacs case involved an injunction of subsequent state mortgage foreclosure proceedings and the Gross case an injunction against state court receivers appointed within four months of bankruptcy. Straton v. New, 1931, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060, however, decided that where a judgment creditor holding a lien valid in bankruptcy on the debtor's realty commences a judgment creditor's suit in the state court more than four months before bankruptcy, the federal court sitting in bankruptcy is without jurisdiction to enjoin the prosecution of the creditor's action. See also Metcalf v. Barker, 1902, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed 122; Pickens v. Roy, 1902, 187 U.S. 177, 23 S.Ct. 78, 47 L.Ed. 128; Emil v. Hanley, 1943, 318 U.S. 515, 519-520, 63 S.Ct. 687, 87 L.Ed. 954. The court in Straton v. New cited with approval similar cases involving suits begun by attachment more than four months prior to bankruptcy as well as mortgage foreclosure proceedings begun prior to bankruptcy where the lien was valid in bankruptcy. Supra, 283 U.S. at page 326, 51 S.Ct. 465, 75 L.Ed. 1060. The basis of the decision in Straton v. New was the existence of concurrent jurisdiction and not the exercise of discretion by the Bankruptcy Court to permit the continuance of such suits. The in rem jurisdiction of the state court having attached first, the Bankruptcy Court was without power to interfere. This rule exists despite the fact that Congress could, had it so desired, have conferred exclusive jurisdiction even in these cases. See Taubel-Scott-Kitzmiller Co. v. Fox, 1924, 264 U.S. 426, 430, 44 S.Ct. 396, 68 L.Ed. 770; e. g. Bankruptcy Act §§ 77, sub. j, 11 U.S.C.A. 205, sub. j.

 The trustee would have us distinguish Straton v. New on the ground that only creditors' liens secured by attach-

ment, levy or judgment may be enforced in prior state court suits impervious to the injunctive power of the Bankruptcy Court. But mortgage foreclosure suits are likewise non-enjoinable. Bryan v. Speakman, 5 Cir., 1931, 53 F.2d 463; In re Greenlie-Halliday Co., 2 Cir., 1932, 57 F.2d 173. We perceive no substantial difference for present purposes between a suit to foreclose a statutory right of redemption and one to foreclose a mortgagor's interest in property. Both are within the doctrine of Straton v. New. By virtue of Mass.Gen. Laws (Ter.Ed.) Sec. 54, the Town after the tax taking, possessed title to the lands so taken subject to the statutory right of redemption. Such title was to be held as security for the repayment of taxes; but was transferable or assignable. See Davis v. Allen, 1916, 224 Mass. 551, 113 N.E. 364; Jenney v. Tilden, 1930, 270 Mass. 92, 169 N.E. 669. This situation thus differs but slightly from the legal title type of mortgage.

We grant that the Racing Association's right of redemption is a transferable interest in land which vested in the trustee in bankruptcy upon the filing of the petition in bankruptcy. O'Day v. Bowker, 1886, 143 Mass. 59, 9 N.E. 16. But prior to bankruptcy this interest of the bankrupt came within the exclusive jurisdiction and control of the Land Court by virtue of the proceedings instituted by the Town on November 26, 1941 to foreclose the right of redemption. Mass.Gen.Laws (Ter.Ed.) Secs. 64 and 65. A favorable decision in the Land Court would result in making the defeasible title of the Town absolute. It can hardly be doubted that the Land Court proceedings were essentially in rem. Consequently, the trustee in bankruptcy succeeding to the bankrupt's interest, acquired an interest no larger than that of the bankrupt—a property interest subject to the prior jurisdiction of the Land Court. It is not less subject to the jurisdiction of the Land Court because the bankrupt continued in possession. By commencement of foreclosure proceedings and the filing of the statutory notices the state court had acquired constructive possession and jurisdiction of the property prior to the initiation of any bankruptcy jurisdic-

tion. In re Maier Brewing Co., 9 Cir., 1933, 65 F.2d 673; In re Greenlie-Halliday Co., 2 Cir., 1932, 57 F.2d 173.

Other cases have held that although a statutory right of redemption descends to the trustee in bankruptcy, bankruptcy does not extend or enlarge the period of redemption. The trustee can only exercise the same right to redeem that the bankrupt had. See Garber v. Bankers' Mortgage Co., D.C.Kan., 1928, 27 F.2d 609; In re Nelson, D.C.S.D., 1935, 9 F.Supp. 657; In re Hageman, D.C.Kan., 1935, 10 F.Supp. 716. How much more so must this non-interference with such a statutory right of redemption exist where prior jurisdiction has been acquired by the state court. In farmer-debtor proceedings under the Frazier-Lempke Act an unexpired statutory right of redemption is extended by Sec. 75, sub. n, 11 U.S.C.A. § 203, sub. n, for a period necessary to carry out the provisions of that section. See Wright v. Union Central Life Insurance Co., 1938, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490; Wragg v. Federal Land Bank, 1943, 317 U.S. 325, 63 S.Ct. 273, 87 L.Ed. 300. Here then is an illustration of a bankruptcy Court exercising paramount and exclusive jurisdiction as conferred by statute; but an analogous provision is not present in those sections of the act devoted to ordinary bankruptcy proceedings. The trustee seeks to support his position by the decision in In re Hotel Charles Co., D.C. Mass., 1935, 12 F.Supp. 19 and In re Argyle-Lake Shore Bldg. Corp., 7 Cir., 1935, 78 F.2d 491. In the Hotel Charles case no prior Land Court jurisdiction existed. Instead the city in that case petitioned the Bankruptcy Court to allow it to go into the Land Court to initiate foreclosure proceedings, and the Bankruptcy Court rightly refused to yield its prior and hence exclusive jurisdiction. See also subsequent proceedings at D.C.Mass., 1935, 12 F.Supp 734 and 1 Cir., 1936, 84 F.2d 589. This case would then be authority if bankruptcy preceded the commencement of proceedings to foreclose in the Land Court; and hence that decision is in conformity with Isaacs v. Hobbs, supra. In the Argyle-Lake Shore case the Illinois statutes did not require court proceedings for fore-

closure. The mere lapse of two years without redemption entitled the County to procure an absolute deed. By an amended statute the right of redemption was held open until the deed was procured. The county, for reasons disclosed in the report, neglected to procure its deed after the expiration of two years and prior to the institution of § 77B proceedings. Relying on the jurisdiction of the Bankruptcy Court, the district court enjoined the county from proceeding with its petition for a deed, which petition had been filed in the state court subsequent to bankruptcy. Consequently, neither of these cases involved a priority of jurisdiction in the state court and lend no support to a similar result in the instant case.

▆ On the basis of Straton v. New, cases cited therein and cases subsequently decided, we feel impelled to conclude that this is a case involving concurrent jurisdiction. This state court action is even less a "proceeding in bankruptcy", where admitted exclusive jurisdiction would exist in the Bankruptcy Court under § 2, sub. a [4] of the Bankruptcy Act, than a judgment creditor's suit, etc., specifically mentioned in Straton v. New. Paramount jurisdiction does exist where the state proceeding "is tantamount to an insolvency proceeding which will be superseded by bankruptcy". Straton v. New, 1931, 283 U.S. 318, 331, 51 S.Ct. 465, 470, 75 L.Ed. 1060. See also In re White Star Refining Co., 5 Cir., 1934, 74 F.2d 269, certiorari denied 1935, 294 U.S. 727, 55 S.Ct. 637, 79 L.Ed. 1257.

Although it might have been wiser to bring all the assets of the bankrupt howsoever situated into the hotch-pot of the Bankruptcy Court, Congress has not so acted and the Supreme Court has denied general power in the Bankruptcy Court to supersede prior state court jurisdiction unless Congress has acted. See Griffin v. Lenhart, 4 Cir., 1920, 266 F. 671, 673. In such a case the trustee in bankruptcy is obliged to proceed in the prior suit. Con-

gress, it seems to us, has provided for this sort of a situation to a limited extent. By Sec. 11, sub. e, of the Bankruptcy Act, the trustee is given sixty days after adjudication to act in a state court proceeding where " * * * a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy * * *". 11 U.S.C.A. § 29, sub. e. This section would seem to indicate that if the period of redemption was still open after June 19, 1944, the trustee was entitled to a stay of the Land Court proceedings for sixty days after adjudication of bankruptcy in order to decide whether redemption was advisable and if so to act accordingly.

This court is impressed by the apparent inequity of this result for which the Town of Agawam contends. The general creditors lose what may be the sole substantial asset of the bankrupt. The Town acquires property presumably of a value in excess of its original tax claim. We, however, consider this result unavoidable on the basis of the law as we understand it. Undoubtedly Congressional demarcation of the respective limits of state and federal jurisdiction in bankruptcy litigation is both possible and necessary. See Taubel-Scott-Kitzmiller Co. v. Fox, 1924, 264 U.S. 426, 430, 44 S.Ct. 396, 68 L.Ed. 770; Note (1932) 41 Yale Law Journal 445; Oldham, Plenary, Summary and Concurrent Jurisdiction of Courts of Bankruptcy, (1940) 15 Journal of National Association of Referees in Bankruptcy 42.

However, before the inequity of the situation is asserted some pertinent observations should be considered. Essentially this result is perhaps no more of a forfeiture than a fortuitous sale resulting from foreclosure proceedings. Despite the fact that it had been claimed that a forced sale under a state court decree would re-

---

[4] Section 2(a). "The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title * * *". 11 U.S.C.A. § 11, sub. a.

366

sult in an elimination of, or substantial reduction in, the excess of the proceeds of sale over the asserted claim, as contrasted with the advantages of a trustee's private negotiations, prior foreclosure proceedings were allowed to continue. See In re Rohrer, 6 Cir., 1910, 177 F. 381; Sample v. Beasley, 5 Cir., 1908, 158 F. 607; Note (1932) 80 University of Pennsylvania Law Review 412. Moreover, although it is true that in this type of foreclosure of a right of redemption no sale results and no proceeds in excess of the claim are available to the trustee, it would seem that this result follows only because the state statutes involved allow it. The threat of such statutory sanctions may be warranted as a means of encouraging payment of taxes, since in order to carry out their corporate functions municipalities require a constant receipt of cash from tax collections. It must be remembered too that the Land Court proceeding had been pending for over two years and that time for redemption had been extended well beyond the statutory two years. Had a final decree of foreclosure been entered on June 19, 1944 we do not feel that the Bankruptcy Court could have upset it. Likewise, we consider that jurisdiction leading to such a decree can not be superseded. Cf. In re River Edge Estates, Inc., D.C.N.J., 1943, 53 F.Supp. 286, affirmed 3 Cir., 1943, 139 F.2d 840. Moreover, the creditors, especially the holders of a substantial mortgage, could themselves have redeemed long prior to bankruptcy had they felt that any equity they had was in danger. The trustee would have us recognize that the validity of the tax assessment was in question and subject to compromise negotiation. That, of course, was a matter for consideration by the Land Court. The validity of the tax claims, was not in issue below and may have become res adjudicata if passed upon by the Land Court. Cf. Stoll v. Gottlieb, 1938, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104.

We conclude, therefore, that the referee in bankruptcy lacked the authority to issue the restraining order and to order a sale of the racing plant free and clear of all liens.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings in accordance with this opinion.