In re Isaac SILVERMAN, Bankrupt.

Arthur S. ROSENFELD, Trustee of the Estate of Isaac Silverman, Plaintiff,

v.

The CITY OF NEW YORK, Defendant.

Bankruptcy No. 77 B 2988.

United States District Court,
S.D. New York.

Jan. 30, 1985.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for City of New York; John de P. Douw, Asst. Corp. Counsel, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for Leucadia, Inc. and of counsel for trustee; Martin J. Bienenstock and Martha J. Rix, New York City, of counsel.

## DECISION ON COMPLAINT SEEKING ORDER AWARDING PROCEEDS OF SALE

HOWARD SCHWARTZBERG, District Judge.

The City of New York was permitted by this court to proceed with its *in rem* foreclosure action to recover delinquent real estate taxes owed with respect to a commercial building located on 25th Street in New York City, which was formerly owned by Isaac Silverman before his Chapter XII case was converted for liquidation under Chapters I–VII of the former Bankruptcy Act. The trustee in bankruptcy maintains that the approximately $1.3 million remaining after the City of New York paid itself the delinquent taxes, penalties and related charges of approximately $282,583.01, should be turned over to the estate and distributed pursuant to the Bankruptcy Act of 1898, which applies to this case. The City of New York contends that it is entitled to keep the excess over its tax lien because Section D17–12.0 b of the New York City Administrative Code authorizes the City to acquire a fee simple title to the foreclosed property, and bars any former interests, claims, liens or equity of redemption. The trustee asserts that Section D17–12.0 b subverts the policy of equitable distribution of a bankrupt's estate which

underlies the Bankruptcy Act and that local law may not supersede superior federal law.

## FACTS

1. Isaac Silverman filed a petition with the United States District Court for the Southern District of New York pursuant to Chapter XII of the former Bankruptcy Act on December 23, 1977. On May 12, 1978, Silverman was adjudicated a bankrupt and the case was converted for liquidation under Chapters I–VII. The plaintiff was appointed as trustee to administer and liquidate the estate.

2. On July 6, 1977, prior to the commencement of this bankruptcy case, the City of New York ("City") commenced an *in rem* action to foreclose unpaid tax liens on a number of properties including the premises located at 122–24 East 25th Street, in New York City ("the 25th Street property"). When the City's foreclosure action was commenced, the record owner of the 25th Street property was Grand White Realty Corp., a corporation whose stock was owned by the bankrupt.

3. When the bankrupt filed his Chapter XII petition on December 23, 1977, after the commencement of the City's *in rem* foreclosure action, but before the entry of judgment of foreclosure, he listed in his schedules as an asset all the shares of stock in Grand White Realty Corp., which in turn owned the 25th Street property. The filing of the Chapter XII petition operated as an automatic stay of all lien enforcement actions pursuant to former Bankruptcy Rule 12–43. Additionally, at the erstwhile debtor's request, the court signed an *ex parte* order dated December 27, 1977, which memorialized the automatic stay and expressly restrained all creditors from attempting "to interfere with any property ... in the possession of said debtor ... or owned by said debtor...." Despite these stays the City obtained a judgment of foreclosure on default on May 25, 1978 and, on the same day, took title to the property by a deed from the Commissioner of Finance to the City of New York. On

May 12, 1978, just prior to the entry of the judgment by the City, Isaac Silverman was adjudicated a bankrupt and the Chapter XII case was converted into a straight liquidation under the former Bankruptcy Act of 1898, as amended in 1938. The automatic stay under Rule 12–43 was terminated when the Chapter XII case was superseded by the straight bankruptcy case and was replaced by the automatic stay under Rule 601. Additionally, this court's *ex parte* stay order dated December 27, 1977 remained in effect.

4. On December 31, 1979, the trustee in bankruptcy commenced an adversary proceeding in this court against the City and the Commissioner of Finance for the City of New York alleging that the entry of the *in rem* judgment of foreclosure had been enjoined by this court and asked that the City's deed be set aside and that the City be enjoined from selling the 25th Street property. The City was preliminarily enjoined from disposing of the 25th Street property by order of this court dated January 4, 1980. On July 28, 1980 the trustee's complaint was dismissed for lack of jurisdiction because it appeared that Grand White Realty Corp., and not the bankrupt, was the record owner of the property in question.

5. Thereafter the trustee in bankruptcy discovered that the 25th Street property had been transferred back to Isaac Silverman individually by Grand White Realty Corp. pursuant to an unrecorded deed and that the estate therefore did have an interest in the 25th Street property.

6. On September 18, 1980, the trustee in bankruptcy moved to vacate the July 18, 1980 order dismissing the trustee's complaint against the City. After a hearing and decision by this court from the bench on October 30, 1980, an order was entered on November 17, 1980, amended by an order dated December 15, 1980, which denied the trustee's motion to reargue the prior dismissal and allowed the foreclosure sale to take place, but provided that after sale of the premises the City should hold all funds in excess of the tax lien in escrow over and above the City's tax claims and charges pending determination by this court as to the claims of the City and the trustee in bankruptcy with respect to such funds. It was the City's position that having acquired title to the premises it was entitled to keep all of the proceeds of the sale. The trustee argued that the Bankruptcy Act precluded the City from obtaining this windfall and that the surplus funds were property of the estate to be distributed in accordance with the formula for distribution under the Bankruptcy Act.

7. The 25th Street property was sold by the City on July 1, 1981, for $1,575,000, consisting of $535,900 in cash and a $1,039,100, fifteen year mortgage with interest of 12 percent per annum. The City applied $282,583.01 of the cash to satisfy its tax claims, interest and related charges. The City invested the balance of the cash at interest, which it now holds in escrow. The balance of the cash, together with mortgage payments previously received, totals approximately $778,340.59. The City claims that it is entitled to keep the approximately $1.3 million in excess of the City's tax lien, inclusive of the $778,340.09 cash fund pursuant to section D17–12.0 b of the New York City Administrative Code.[1]

**1.** b. The court shall make a final judgment awarding to the city the possession of any parcel described in the list of delinquent taxes not redeemed or withdrawn as provided in this title and as to which no answer is interposed as provided herein. In addition thereto such judgment shall contain a direction to the finance administrator to prepare, execute and cause to be recorded a deed conveying to the city full and complete title to such lands subject only to tax liens accrued or accruing subsequent to those contained in the list of delinquent taxes. Upon the execution of such deed, the city shall be seized of an estate in fee simple absolute in such land and all persons, including the state of New York, infants, incompetents, absentees and non-residents who may have had any right, title, interest, claim lien or equity of redemption in or upon such lands shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption, except as otherwise provided in section D17–25.0 of this title. The appointment and tenure of receivers, trustees or any other persons, including administrators under article seven-a of the real property actions and proceedings law, appointed by an

8. In April of 1984, the trustee in bankruptcy applied to this court for an order annulling the bankruptcy stay so that the first mortgagee, whose lien was wiped out by the City's *in rem* tax foreclosure sale, could not assert against the trustee that such sale violated the bankruptcy stay or that the first mortgagee continued to have priority over the trustee's interests in the proceeds in excess of the City's tax lien.

9. On August 30, 1984, this court concluded that the first mortgage may not assert the invalidity of the City's *in rem* foreclosure judgment against the trustee in bankruptcy. Accordingly, it was ruled that the court would grant the trustee's motion for an order pursuant to Bankruptcy Rule 601(c) annulling the automatic stay under Rule 601 and the *ex parte* stay order issued at the commencement of this case so as to confirm the validity of the City's *in rem* foreclosure judgment and sale with respect to the bankrupt's 25th Street property. *In re Silverman*, 42 B.R. 509, 517 (Bkrtcy.S. D.N.Y.1984).

10. The City now maintains that when its *in rem* foreclosure judgment and sale wiped out the first mortgagee's secured interest in the 25th Street property it also eliminated the trustee's interest in any proceeds in excess of the City's tax lien, especially since the trustee's rights were junior to those of the first mortgagee.

## DISCUSSION

When the trustee in bankruptcy successfully established that the first mortgagee's interest in the 25th Street property was eliminated by the City's *in rem* foreclosure sale, he chose not to be content with reliance solely upon the proposition that the automatic stay under former Bankruptcy Rule 12–43(a) and this court's December 27, 1977 *ex parte* stay, enjoining the City's foreclosure sale, operated for the benefit of the estate and that a third party may not use a violation of the bankruptcy stays as a weapon against the estate and to its detriment. Instead, the trustee also applied for, and successfully obtained, affirmative relief in the form of an order pursuant to former Bankruptcy Rule 601(c) annulling the bankruptcy stays so as to confirm the validity of the City's *in rem* foreclosure judgment and sale that occurred after the commencement of this case. Accordingly, the City acquired a fee simple title to the 25th Street property unblemished by any reference to the bankruptcy stays. It should also be noted that the City's *in rem* foreclosure sale occurred during the post-petition phase of this case. Thus, the trustee may not argue that the City's tax claim of $282,583.01 was less than the reasonable equivalent value of the property at the time of the transfer and in violation of § 67d of the Bankruptcy Act of 1898 as amended. *Cf. Durrett v. Washington National Insurance Co.*, 621 F.2d 201, 204 (5th Cir. 1980) (foreclosure sale which failed to produce "fair equivalent" of property's value set aside under § 67d). Both former Act section 67d and the *Durrett* case apply only to prepetition transfers and have no application to post-petition conveyances. The 25th Street property was validly sold by the City following its receipt of title pursuant to Section D17–12.0 b of the New York City Administrative Code, but subject to this court's escrow orders which reserved for later determination the competing claims of the City and the trustee in bankruptcy as to the proceeds in excess of the City's tax claims.

The trustee in bankruptcy maintains that the former Bankruptcy Act preempted Section D17–12.0 b of the New York City Administrative Code because under Article I, Section 8, Clause 4 of the United States Constitution, Congress has exclusive power to establish uniform laws

---

order of a court to manage real property, shall terminate when title to such property vests in the city pursuant to the provisions of this title. After such termination, said receivers, trustees or administrators shall be accountable to the courts that appointed them for the faithful per-formance of their fiduciary obligations during the term of their appointment and to the city for any rents and income received by them for any period subsequent to the date of investing of title in the city.

on the subject of bankruptcies. Accordingly, the trustee correctly asserts that a state or local government is without power to make or enforce any law governing bankruptcies that conflicts with the national bankruptcy law or that supersedes the former Bankruptcy Act's distribution scheme. *Heiser v. Woodruff,* 327 U.S. 726, 732, 66 S.Ct. 853, 855, 90 L.Ed. 970 (1946); *International Shoe Company v. Pinkus,* 278 U.S. 261, 263–64, 49 S.Ct. 108, 109–10, 73 L.Ed. 318 (1929). Thus, the trustee places strong reliance on the language in *In re Leslie,* 520 F.2d 761 (9th Cir.1975), which held that the proceeds from the sale of a bankrupt's liquor license and business should be turned over to the trustee and not distributed in accordance with the state priority scheme. The Ninth Circuit Court of Appeals said:

> Upon Leslie's bankruptcy, title to the proceeds in question passed to the trustee under § 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5), for distribution in accordance with the priorities enumerated in § 64 of the Act, 11 U.S.C. § 104, with any remainder to be divided pro rata among the bankrupt's general creditors. Conflicting priorities established by state law must yield upon the intervention of bankruptcy to superior federal law. *See Elliott v. Bumb,* 9 Cir., 1966, 356 F.2d 749, 754–5; *In re Crosstown Motors, Inc.,* 7 Cir., 1959, 272 F.2d 224, 227.

Id. at 762. Manifestly, state and local laws designed to effect the distribution of a debtor's assets must give way to the extent they conflict with federal bankruptcy law. The question for determination, however, is whether Section D17–12.0 b of the New York City Administrative Code does in fact conflict with federal bankruptcy law.

By its terms Section D17–12.0 b authorizes the entry of a state court judgment against any real estate as to which no answer was interposed in response to the City's *in rem* foreclosure action to recover delinquent real estate taxes. Such default judgment directs that the finance administrator shall convey to the City a fee simple title to the property which cuts off all claims, liens and interests that might be asserted with respect to the property. In effect, the *in rem* tax foreclosure action is similar to strict foreclosure available to mortgagees in some jurisdictions; the foreclosing claimant may obtain clear title to the property and eliminate the debtor and all junior secured claimants who do not bid in to protect their interests. *See* 38 New York Jurisprudence, *Mortgages and Deeds of Trust* § 323[3] (1964). The *in rem* method employed by New York City was described in a recent article in the New York State Bar Journal as follows:

> For a commercial parcel, one year after the lien date for a particular tax, the property is listed "in rem," which means the City gathers all delinquent properties and files a lis pendens against them. A proceeding is begun whereby some six months later the property is deeded to the City by the City Treasurer. Although the mortgagee has a one year period to redeem the property by paying all the taxes, the mortgage has been extinguished.

Bergman, *When The Mortgagor Defaults in Real Property Taxes,* 56 N.Y.St.Bar J., No. 8, at 24, 25 (1984) (footnote omitted).

The trustee's argument that the City's *in rem* tax foreclosure procedure conflicts with the distribution scheme under the Bankruptcy Act ignores the fact that the *in rem* tax foreclosure procedure does not call for any distribution of funds at all. The City acquired absolute title to the property, with the approval of this court, with the right either to keep the property or to sell it, as it deemed best. There was no assurance that the City would realize its tax claim in full upon a subsequent sale. Nevertheless, whatever the City did with the property after it acquired absolute fee simple title had no bearing on the rights of the former owners, any of their trustees in bankruptcy, or junior lienors. Although this court ordered that any and all claims of the trustee should attach to the proceeds from the *in rem* tax foreclosure sale and be distributed as determined by this court, it is clear that the trustee had no claims

after the City acquired title to the property that could attach to any proceeds realized from the sale. A debtor and junior secured claimants who have lost all their interest in the property as a result of a foreclosure judgment and transfer of title have no right, upon a subsequent sale of the premises, to any surplus existing after payment of the foreclosure claim. *General Auto Truck Co. v. Rust,* 88 F.2d 774 (D.C.Cir. 1936); 59 Corpus Juris Secundum § 596, at 1031 (1949).

Clearly, the 25th Street property was within the jurisdiction of this court when the debtor filed his Chapter XII case on December 23, 1977 because the City did not obtain its judgment of foreclosure until May 25, 1978, which was after the commencement of this case. Pursuant to Section 411 in Chapter XII of the former Bankruptcy Act, the bankruptcy court "in which the petition is filed shall ... have *exclusive* jurisdiction of the debtor and his property, *wherever located.*" (emphasis added). This jurisdictional aspect applicable to reorganization cases was broader than the rule in straight bankruptcy cases, where, absent the consent of a prospective defendant, the court had to have actual or constructive custody of the property in question for jurisdictional purposes. *Cline v. Kaplan,* 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944); *Harrison v. Chamberlin,* 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926); *Taubel-Scott-Kitzmiller Co., Inc. v. Fox,* 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924). Thus, in a straight bankruptcy case, a trustee in bankruptcy might look to Section 67a(1) of the former Bankruptcy Act, which provided that liens against property obtained within four months before the filing of a petition for bankruptcy were voidable. Accordingly, where a lien was obtained more than four months before the filing of the bankruptcy petition, judicial proceedings to enforce such lien could continue unabated unless the property remained in the custody of the bankrupt at the time the bankruptcy case was commenced. *Straton v. New,* 283 U.S. 318, 326–27, 51 S.Ct. 465, 468–69, 75 L.Ed. 1060 (1931). Neither Section 67a(1) of the former Bankruptcy Act,

nor Bankruptcy Rule 601 could be employed to deprive the state court of its prior in rem jurisdiction over the property in question. *LaFortune v. Naval Weapons Center Federal Credit Union (In re LaFortune),* 652 F.2d 842, 848–49 (9th Cir. 1981); *Town of Agawam v. Connors,* 159 F.2d 360 (1st Cir.), *cert. denied,* 330 U.S. 845, 67 S.Ct. 1086, 91 L.Ed. 1290 (1947).

■ In this reorganization case, Section 411 in Chapter XII of the former Bankruptcy Act and the automatic stay under Bankruptcy Rule 12–43 (which was later superseded by Rule 601 after the case was converted) combined to prevent the City from proceeding with its *in rem* tax foreclosure action. However, once the automatic stay was annulled at the request of the trustee so as to validate the City's foreclosure sale and thereby wipe out the first mortgagee's lien, the City's title became absolute and untainted by its previous violation of the now annulled automatic stay. Indeed, the trustee's successful request for an annullment of the automatic stay acted as a double edged sword because not only was the first mortgagee's interest cut off, but the trustee's junior equity interest was similarly severed when the City's foreclosure sale was authorized by this court. The annulment of the bankruptcy stays operated retroactively to the date of the filing of the Chapter XII petition and validated the City's acquisition of absolute title to the 25th Street property, thereby removing the property from the jurisdiction of this court. This point was recently addressed by the Eleventh Circuit Court of Appeals in *In re Albany Partners, Ltd.,* 3 Bankr.L.Rep. (CCH) ¶ 70,184, at 86,268 (11th Cir. Dec. 26, 1984):

It is true that acts taken in violation of the automatic stay are generally deemed void and without effect. *Kalb v. Feuerstein,* 308 U.S. 433, 443, 60 S.Ct. 343, 348, 84 L.Ed. 370 (1940); *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982). Nonetheless, § 362(d) expressly grants bankruptcy courts the option, in fashioning appropriate relief, of "annulling" the automatic

stay, in addition to merely "terminating" it. The word "annulling" in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to "terminating", would be superfluous. As is stated in 2 Collier's Bankruptcy Manual ¶ 362.06 (3d Ed.1983).

> "In addition to the obvious power to 'terminate' the stay, [§ 362(d)] also gives the bankruptcy court the power to 'annull' [sic] the stay. The difference between the two is that an order annulling the stay could operate retroactively to the date of the filing of the petition which gave rise to the stay, and thus validate actions taken by the party at a time when he may have been unaware of the existence of the stay. On the other hand, an order terminating the stay would be operative [sic] only from the date of its entry."

The annulment of the automatic stay in this case placed the City in the same position as the Town of Agawam in *Town of Agawam v. Connors,* 159 F.2d 360. There the Collector of taxes for the Town of Agawam, Massachusetts gave a tax collector's deed to the Town for delinquent taxes owed by the debtor with respect to certain real estate. This occurred more than four months before the debtor was voluntarily adjudicated a bankrupt. Thereafter, a final decree was entered in the state court. The bankruptcy court permitted the Town to sell the property free and clear of liens with the liens to transfer to the proceeds of sale. The Town argued that it was entitled to the proceeds in excess of the tax lien because it held not a tax lien to the real estate in question, but full title by reason of the final decree awarded to it by the state court. The Bankruptcy Court and the District Court denied the Town's position because of "the paramount jurisdiction of a Federal Court of Bankruptcy." The First Circuit Court of Appeals reversed the lower courts, and, citing *Straton v. New,* 283 U.S. 318, 51 S.Ct. 465, held that the Town had acquired its deed more than four

months before the commencement of the bankruptcy case so that the state court had concurrent jurisdiction with the bankruptcy court, which did not have exclusive jurisdiction over the property in question. The First Circuit Court noted that as a result of its ruling, the general creditors lost what may have been the sole substantial asset of the bankrupt, while the Town acquired property of a value in excess of its original tax claim. However, the court said: "Essentially this result is perhaps no more of a forfeiture than a fortuitous sale resulting from foreclosure proceedings." 159 F.2d at 365. The court also observed that "the creditors, especially the holders of a substantial mortgage, could themselves have redeemed long prior to bankruptcy had they felt that any equity they had was in danger." 159 F.2d at 366. In the case at bar, either the first mortgagee or the largest unsecured creditor could have bid in at the tax foreclosure sale had they desired to preserve the value of the property in excess of the City's tax claim. This they failed to do.

The trustee relies upon *Charlestown Savings Bank v. Martin (In re Colonial Realty Investment Co.)* 516 F.2d 154 (1st Cir.1975), where the district court did not give effect to a state law making mortgagees legal owners of property. The first circuit declared that the idiosyncracies of local property laws could not impede the national policy underlying the federal bankruptcy law which empowered a Chapter XII court to exercise summary jurisdiction over a mortgagee who took possession of the debtor's real estate prior to the filing of the Chapter XII petition. In the instant case there is no question that both the City and the 25th Street property were subject to the summary jurisdiction of this court and that the City's postpetition acquisition of title to the property violated the bankruptcy stays. However, the trustee successfully obtained an order annulling the bankruptcy stays so as to confirm the City's foreclosure sale, thereby wiping out the senior interest of the first mortgagee.

In so doing, the trustee also eliminated his junior interest in the equity.

In summary, that this court had jurisdiction over the 25th Street property by the commencement of the Chapter XII case, and that the City submitted to the jurisdiction of the bankruptcy court when it filed its proof of claim, do not detract from the fact that the City's acquisition of absolute title to the property, notwithstanding the bankruptcy stays, was confirmed when the trustee successfully obtained an order annulling the stays pursuant to Bankruptcy Rule 601(c). The City's original violation of the bankruptcy stays was the only defect in the City's title to the property, which taint was removed when the stays were annulled. Having obtained clear title to the 25th Street property under the aegis of the bankruptcy court, the City's authorized sale of the property does not differ from the situation where a mortgagee is granted relief from a bankruptcy stay so as to proceed with a state court foreclosure action. The funds realized in such foreclosure action are not distributed under the aegis of the bankruptcy court because their distribution is determined in accordance with state law. The pendency of the bankruptcy case does not give the trustee in bankruptcy any greater right to the foreclosure proceeds than is authorized under state law. Similarly, the City's subsequent resale of the 25th Street property does not give the trustee in bankruptcy any interest in the funds realized by the City, whether the amount received was greater or less than the City's property tax claim.

### CONCLUSIONS OF LAW

1. The annullment of the automatic stay, as requested by the trustee in bankruptcy, confirmed the validity of the City's title to the 25th Street property, which the City was authorized by this court to sell pursuant to the City's *in rem* tax foreclosure procedure.

2. The amount that the City realized from the sale in excess of its tax claim constitutes a profit to the City arising out of its ownership of the property. The City may keep this profit without offending the distribution scheme under the Bankruptcy Act because this profit is not part of the bankruptcy estate.

3. The City is entitled to an order dismissing the trustee's complaint, which seeks to recover this profit for the estate, with the result that the City may retain the funds in question.

SUBMIT ORDER on notice.